# Richmond.

## CITY OF RICHMOND V. JACKSON AND OTHERS.

### March 16, 1915.

1. EVIDENCE—*Hearsay—Failure to Strike Out—When Harmless.*—A witness testified in chief that, before the happening of the accident complained of, two men looked at the sewer alleged to have caused the accident and talked of being connected with the sewer department. On cross-examination the witness said she did not see these men or hear them talk, but that they were seen and heard by a lady next door. The defendant moved to strike out this evidence, but the trial court overruled the motion and "stated that it could not strike out evidence that had gone before the jury, but that if she did not see them it was not evidence." It was subsequently shown by the undisputed evidence that the sewer department did have notice of the sewer ditch before the accident, and that two men connected with the department did in fact go there as the witness had testified.

   *Held:* The motion to exclude should have been sustained in direct terms and not indirectly as was done, but in view of the subsequent undisputed evidence, it was not reversible error.

2. EVIDENCE—*Admissibility—Personal Injury—Condition Long After Injury.*—The testimony of a physician who examined the plaintiff for the first time nearly a year after he received a personal injury, describing scars, inflammation and injury to the plaintiff's leg, is admissible in an action to recover for such injury, if it is shown that the conditions testified to by the physician were caused by the accident complained of, although another physician who examined and treated the plaintiff at the time of and immediately following the accident did not think any such conditions as were found would result from such an accident.

3. DAMAGES—*Excessive—Verdict—Personal Injury.*—A verdict of $700 for a personal injury cannot be set aside as excessive where it appears that, in consequence of the injury, the plaintiff sustained appreciable pecuniary loss, suffered great pain, and a year thereafter was still suffering and partially disabled.

4. MUNICIPAL CORPORATIONS—*Sewers—Defective Ditch—Personal Injury—Liability of Contractor—Case at Bar.*—Although, in the case at bar, the contractor, who undertook to dig ditches and lay sewer

pipes for the city, was under contract to keep in repair for twelve months after its completion the whole of the work and to guarantee it against all defects of any nature, and to replace the same with work satisfactory to the city engineer, he was not required to guard and protect the work for the safety of the public for twelve months after its completion and acceptance by the city, but only during its progress.

Error to a judgment of the Circuit Court of the city of Richmond in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*H. R. Pollard* and *Geo. Wayne Anderson,* for the plaintiff in error.

*C. R. Sands, Haw & Haw* and *T. Gray Haddon,* for the defendants in error.

KELLY, J., delivered the opinion of the court.

The city of Richmond, through C. B. Pollard, an independent contractor, constructed a sewer in Blair street with certain branches called house connections. Shortly after the sewer was laid and the work accepted by the city there was a heavy rain, which caused some of the ditches to settle and sink. One of these was a ditch for a house connection, leading across a sidewalk on Blair street. The plaintiff, G. A. Jackson, coming along the sidewalk at this point after dark, fell into the hole caused by the sinking of the ditch and received injuries for which he brought this suit. By an appropriate allegation in the declaration, the contractor, Pollard, was named as a co-defendant with the city, pursuant to section 19-g of its charter (Acts, 1908, pp. 152, 154), which provides that "in any action against the city to recover damages against it for any negligence in the construction or maintenance of its streets, alleys or

parks, where any person is liable with the city for such negligence, every such person shall be joined as defendant with the city in any action brought to recover damages for such negligence, and where there is a judgment or verdict against the city as well as the other defendant, it shall be ascertained by either the court or the jury, which of the defendants is primarily liable for the damages assessed."

The verdict was in favor of Pollard, but was for the plaintiff and against the city for $700, and a judgment was rendered accordingly, which is here upon a writ of error obtained by the city.

There are four assignments of error, three affecting the correctness of the plaintiff's recovery against either of the defendants, and one involving the correctness of the verdict and judgment as between the city and C. B. Pollard. We will dispose of these assignments in the order above named.

1. The witness, Mrs. Newsome, on direct examination testified that before the accident happened two men came up in a buggy, looked at the sewer alleged to have caused the accident, and talked of being connected with the sewer department; but on cross-examination this witness said she did ont see these men or hear them talk, but that they were seen and heard by a lady next door. The city moved to strike out this evidence, but the court overruled the motion and "stated that it could not strike out evidence that had gone before the jury, but that if she did not see them, it was not evidence." This is assigned as error.

The motion should have been, as a matter of regular and correct practice, sustained in direct terms, instead of in the irregular manner in which the court saw fit to do it. This irregularity, however, even if it stood alone, would furnish a very slender foundation upon which to base a reversal of the judgment, and it becomes manifestly insufficient in the light of the subsequent undisputed evidence that the sewer depart-

ment received notice of the condition of the sewer ditch before the accident, and that two men connected with that department did in fact go there in a buggy just as Mrs. Newsome said.

2. The witness, Doctor Staton, was permitted, over the objection of the city, to testify to the plaintiff's condition as he found it about two or three weeks before the trial, that being Doctor Staton's first examination of the plaintiff, and the trial being had about a year after the injury. The chief ground of the objection to this testimony, which described scars, inflammation and injury to plaintiff's leg, seems to be that it conflicts with what might naturally be expected as the result of such a fall as plaintiff received, and conflicts also with the conclusions and opinion of Doctor West who examined and treated the plaintiff at the time of and immediately following the accident, and who did not think any such conditions as Doctor Staton found would result therefrom. It is argued, therefore, that the injuries Doctor Staton found must have come from some more recent cause.

When the testimony of Doctor Staton was concluded, the city repeated its objection and moved the court to strike the evidence out, but the court told the jury they might consider it if plaintiff could show that the conditions testified to by Doctor Staton were caused by the accident; but that otherwise it was not evidence. This was a correct ruling; and the testimony of the plaintiff and that of his mother as to the sole cause and the continuing and persistent character of his scars and symptoms were such as to make it entirely proper for the court to leave it to the jury to determine whether the conditions Doctor Staton found were due to the accident in question.

3. It is urged that the court erred in overruling the motion to set aside the verdict because, as alleged, (a) the court misdirected the jury as to the law, (b) the verdict was contrary to the law and the evidence, and (c) the verdict was excessive.

All of these grounds have been, or, under the fourth assignment, will be discussed except the claim that the verdict is

excessive. The evidence tended to show that plaintiff's pecuniary loss in connection with his regular avocation of delivering newspapers was appreciable, that he had suffered great pain, and that at the time of the trial, a year later, he was still suffering and partially disabled. Under these circumstances, we cannot say that a verdict for seven hundred dollars was excessive. *Southern Ry. Co.* v. *Smith,* 107 Va. 553, 556, 59 S. E. 372.

4. The remaining assignment of error challenges the correctness of the judgment as between the city and C. B. Pollard. The question arises upon two instructions, which were substantially the same in principle, and only one of which, therefore, is quoted here, viz:

"The court instructs the jury that if they believe from the evidence that the defendant, C. B. Pollard, constructed the sewer on Blair street in accordance with the specifications of the city engineering department, and that said sewer had been completed by him and accepted by the city before the time of the injury complained of, then they are instructed that there was no duty or obligation on the part of the said C. B. Pollard to watch for or to be on the lookout for sinkages or holes which should develop on said sewer, and that there was no duty on the said C. B. Pollard to guard such sinkages and holes by barricades or lights, and they must find for the defendant, C. B. Pollard, *unless you shall believe from the evidence that the city gave reasonable notice prior to the accident to C. B. Pollard, or his agent, of the defect in said street, so that he could repair or safeguard it.*"

The italicized words in the instruction indicate the chief point of difference between the city and the contractor. There is, it is true, a claim on behalf of the city that undisputed proof shows notice to the contractor of the defect in the street prior to the accident, but upon a careful study of all the relevant evidence we think this question of notice was one for the jury to determine. The real question presented by the instructions

is whether, under the contract between the parties, the contractor was primarily liable for the damage, regardless of any notice by the city as to the condition of the street. It is contended by the city that notice was not necessary.

This contention is based upon a clause in the contract which provides that the contractor shall "keep in repair for twelve (12) months after its completion the whole of the work embraced in this contract," taken along with a further provision that "to secure the faithful performance of each and every condition, stipulation and requirement made by this contract and to indemnify and save harmless the party of the second part from any and all damages, as well as any other party, in person or property, either directly or indirectly arising out of any failure to perform the same, the party of the first part is to execute a bond in the penalty of six hundred and eighteen ($618) conditioned for such faithful performance." This bond was given.

It is to be observed that the contractor did not deny his obligation to fill up the hole and repair the street; the issue here being whether, after the work was completed and accepted by the city, there was any obligation on him to keep a lookout for holes so as to guard the public against danger. The terms of the contract which we regard relevant on this point seem to negative the city's claim. These terms are as follows (the italics being added): "The contractor shall be required to guard the public effectually from accident *during the progress of the work,* both by day and night, and will be held responsible for any damage the city may have to pay in consequence of the acts of himself or his agents. . In all cases he shall protect his work and the public *during its execution,* and *after its completion, by proper barriers, lights and watchman, until the city engineer shall have in writing accepted the work* and directed the removal of the barriers, lights, and watchman, and in the event of a separate suit against the city, or a suit

against the city and the contractor jointly, growing out of the negligent act or omission of the contractor in relation thereto, the contractor hereby agrees to become primarily liable for all damages resulting therefrom, and hold the city harmless for all such damages. The contractor will be required to keep in repair for twelve (12) months after its completion the whole of the work and to guarantee it against all cracks, scaling or defects of any nature, and to replace same with work satisfactory to the city engineer."

This is the only section in the contract which provides for guarding the work. It is the section also which provides for keeping the work in repair for twelve months. Nothing in it requires the contractor to guard or protect the work during the twelve months *after completion.* The inference is that it was only contemplated that the contractor would guard the public against the work during its progress and until its acceptance by the city. This we think is the reasonable and natural construction to place upon the language of the parties, and is in keeping with what reasonable business men might be expected to stipulate. This, too, seems to be the construction which the parties themselves adopted. When the city was notified, it proceeded to hunt up and notify Pollard; and the assistant city engineer testified that the work had been properly done originally, and that the only other interest Pollard had in it was to refill the trenches when the city called on him.

There is no claim that the work had been defectively or imperfectly done. On the contrary it had been approved and accepted, and the petition for this writ of error concedes that no question is made upon the original character of the work. It can hardly be supposed that the contract contemplated that after the completion and acceptance of the sewer · Pollard should continue to inspect the work with a view to protecting the public from personal injuries. The evident purpose of the contract in respect to keeping the sewer in

repair after completion was to place upon Pollard instead of the city the inconvenience and cost of making any repairs that might become necessary within the specified period.

A part of the regular business and duty of a municipal corporation is to inspect its streets and sidewalks, and it is presumed to be equipped for this purpose. It is not a part of the usual business and duty of a contractor to inspect the streets upon which it may from time to time do work for the municipality, and there is no presumption that a contractor is equipped for this purpose. If, therefore, it be conceded that the municipality (which cannot delegate its duty in this respect so as to avoid liability) might legally contract with another person to inspect and guard the streets, and in default thereof to become liable to it for such damages as it might have to pay for failure to perform its duty, the terms of the contract to this effect would certainly have to be plain and unmistakable. Such is not the case here, and we are of opinion that the instructions complained of were correct.

The judgment is affirmed.

*Affirmed.*