# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

PIONEER CONSTRUCTION COMPANY, INC. v. ETHEL R. HAMBRICK.
CITY OF ROANOKE v. ETHEL R. HAMBRICK.

April 21, 1952.

Record Nos. 3918, 3919.

Present, Hudgins, C. J., and Spratley, Buchanan, Miller and Smith, JJ.

The opinion states the case.

*Woods, Rogers, Muse & Walker* and *Andrew S. Coxe,* for Pioneer Construction Company, Inc., plaintiff in error.

*Randolph G. Whittle* and *James N. Kincanon,* for city of Roanoke, plaintiff in error.

*B. Purnell Eggleston,* for Ethel R. Hambrick, defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Mrs. Ethel R. Hambrick instituted this action against the Pioneer Construction Company, Inc., and the city of Roanoke, to recover damages for injuries to her person and clothing, sustained when she fell into a ditch on Hunt avenue, in the city of Roanoke. The jury returned a verdict in her favor for the sum of $3,000, against both defendants, and the trial court entered judgment accordingly. We granted a writ of error to each of the defendants, who will be hereinafter referred to as Pioneer. and the city.

Numerous assignments of error are made by each of the defendants. However, Pioneer relies upon the sole contention that the plaintiff was guilty of contributory negligence as a matter of law. The city also relies primarily on the same contention; but it further claims that the negligence of Pioneer, if any, was not imputable to the city because the relationship between it and Pioneer was that of principal and independent contractor.

The facts stated in the light most favorable to the plaintiff, in view of the jury's verdict, may be summarized as follows:

On December 1, 1949, Pioneer, under a contract with the city, was engaged in constructing a sanitary sewer line along the center of Hunt avenue. The avenue is 30 feet wide and runs north and south. As the work progressed, trenches for lateral sewer lines were dug. Digging of the trenches was begun at the abutting property lines and thence extended to the main sewer line.

On Hunt avenue at its northern intersection with Tenth street, Pioneer had placed a barricade which bore a sign reading "Street Closed—Barricade—Please excuse the inconvenience of this work—it is being done for the future development of the City of Roanoke, and is being done by the Pioneer Construction Company, Inc." At the southern end of the main sewer line on Hunt avenue, approximately in front of plaintiff's residence, was another barricade consisting of two saw horses with a board laid across them. Since there was no other practical way of travel, each of the barricades was so placed that persons residing on the street could use it in going to and from their homes.

On December 1, 1949, around noon or about one o'clck p. m., Pioneer, in digging a lateral trench, extending about 8 feet from the property line of a lot on the east side of Hunt avenue, struck and broke a buried water main. Further digging was stopped because of the flow of water. Pioneer promptly notified the

Water Department of the city of Roanoke, and two or three hours later employees of the city went to the excavation to make repairs to the water main. It was necessary to move a small amount of dirt in the trench around the water pipe. There was some delay in work on the water pipe because of the failure promptly to locate some water valves. The employees' of the city completed their work around five o'clock p. m. It was then beginning to get dark. They departed, leaving, however, the excavation open without any barrier, barricade, or sign of warning around it. At the time of their departure, the superintendent of the City Water Department said he saw none of Pioneer's employees at the site.

The home of Mrs. Hambrick was located on the east side of Hunt avenue. She was accustomed to go daily to her place of employment in another part of the city of Roanoke, traveling on a bus which she boarded at the intersection of Hunt avenue and Tenth street. The intersection was approximately 850 feet from her home. She usually left her home about six a. m. each morning, and returned the same day about four p. m. In going to and returning from the bus stop at Tenth street, she customarily walked along the easterly side of Hunt avenue. When she returned from her daily work about four p. m. on December 1, 1949, she saw the city's employees engaged in repairing the broken water main in the sewer lateral line, approximately 300 feet north of her residence. She "cut along the edge of the ditch," and passed safely on her journey.

Next morning, at approximately six o'clock, Mrs. Hambrick, accompanied by her next door neighbor, Mrs. Grant, left her home to go to her work. It was then, she said, "as dark as it could be." She proceeded northwardly along her usual pathway on Hunt avenue towards Tenth street, to board a bus, and was, she said, proceeding "as carefully as I know how to walk"; "walking and thinking the best I could"; "thinking and trying to be as careful as I knew about it"; when she suddenly stepped into the lateral ditch, at the place where the water line had been broken the day before. She testified that there was no light, barricade or other warning posted around the ditch.

Mrs. Grant, who was walking about 5 feet behind plaintiff, said that she did not see Mrs. Hambrick fall into the hole because of the darkness. She and other witnesses also testified that the ditch was not guarded by any barricade, light or other warning. There were lights placed on the barricades at each

end of the street and on some construction equipment in the street at a distance from the ditch.

Witnesses for Pioneer said that the lateral ditch involved was the only one left open, and that but for the breaking of the water line and the time consumed in its repair, it would have been closed. Another lateral ditch, on the same side of Hunt avenue, to the north had been opened and closed. The workmen of Pioneer usually completed their work about five p. m. of each day; and there was evidence they were instructed that before leaving their work they should place warnings and lights around obstructions and excavations left in the street.

Employees of Pioneer said they placed warning lights around the open hole on the afternoon of December 1st, in accordance with their instructions; but it is conceded that the verdict of the jury determined that there were no lights or guards posted around the excavation at the time in question.

On the question of negligence, the defendants rely principally upon three Virginia cases, *Winchester* v. *Carroll*, 99 Va. 727, 40 S. E. 37; *Bohlkin* v. *Portsmouth*, 146 Va. 340, 131 S. E. 790, 44 A. L. R. 810; *Hill* v. *Richmond*, 189 Va. 576, 53 S. E. (2d) 810.

In the *Hill Case*, plaintiff was injured by a permanent depression in the sidewalk which had been known to him for several years, and had been seen by him previously that very day. There was no construction work in the street, and he had no reason to believe the permanent defect had been corrected.

In the *Bohlkin Case*, plaintiff fell over a water meter box, in sight of her home and well known to her, while going through a dark unpaved, unlighted alley, when by a detour, she could have used a smooth, paved well lighted sidewalk.

In the *Carroll Case*, the plaintiff fell off a sidewalk three feet above street level. She knew of its condition, and had passed along that sidewalk the same evening. A new trial was directed because of the absence of proper instructions as to her knowledge of the danger. She was not held guilty of contributory negligence as a matter of law.

The exact factual situation presented here is unlike that in each of the above cases.

In *Butler Co.* v. *Wilbun*, 192 Va. 263, 268, 64 S. E. (2d) 738, the following language is quoted with approval from *Virginia Elec., etc., Co.* v. *Wright*, 170 Va. 442, 446, 196 S. E. 580:

■ "Whether a negligence case should be submitted to a jury or determined by the court must always turn on the peculiar

facts in the particular case. It accomplished nothing to refer to and quote from all of the negligence cases that have been decided by this court. Nor will it be advantageous to try to reconcile the cases. The principles are well settled. The application of them to the varying facts is a difficult problem. No two cases are identical in their essential facts. Generally, negligence is for the jury and should not be taken from it unless there is no real conflict. The verdict must stand in such cases unless there is a plain deviation from the evidence or it is palpable that the jury have not drawn the correct inference from the facts. This court has said time after time that if fair-minded men may honestly differ from the proofs submitted as to the negligence or contributory negligence charged, the question is not one of law, but one of fact for the jury under proper instructions from the court.''

''Contributory negligence of a plaintiff is failure to use reasonable care. Such failure is not presumed, but must be shown by the evidence. Depending as it does upon the facts of the case, it is usually a jury question, and is to be decided by the court only when reasonable men should not differ as to what facts are proved and as to the proper inferences from the facts proved. * * * Reasonable care requires that the looking and listening be done where it would reasonably be expected to be effective.'' *Norfolk, etc., Belt Line R. Co.* v. *Freeman,* 192 Va. 400, 408, 64 S. E. (2d) 732.

This case is more closely akin to the following line of cases: *Gordon* v. *Richmond,* 83 Va. 436, 2 S. E. 727; *Danville* v. *Robinson,* 99 Va. 448, 39 S. E. 122, 55 L. R. A. 162; *Newport News, etc., Co.* v. *Bradford,* 100 Va. 231, 40 S. E. 900; *Charlottesville* v. *Stratton,* 102 Va. 95, 45 S. E. 737; *Bashford* v. *Rosenbaum Hdw. Co.,* 120 Va. 1, 90 S. E. 625; and *Tyler* v. *Richmond,* 168 Va. 308, 191 S. E. 625.

In the *Bradford Case,* at page 236, with respect to contributory negligence, this is said:

''The mere fact that a street crossing is in a dangerous condition, and the danger is known, does not make the act of attempting to cross, in the exercise of ordinary care, negligence as matter of law. To be negligence *per se,* the danger must be so apparent that in the use of ordinary care the traveller should not attempt to cross the street. If reasonably fair-minded men would differ as to the propriety of encountering the danger with

ordinary care, then it is a question for the jury to determine upon all the facts and circumstances of the case.''

In *Tyler* v. *Richmond, supra,* where a pedestrian tripped over a chain lying on an unpaved sidewalk, we said at page 313:

''It was her duty to exercise ordinary care for her own safety upon the occasion in question. What amounts to ordinary care is generally for the jury to decide and depends upon the circumstances of each particular case. Ordinarily a pedestrian may assume that the sidewalk is unobstructed, certainly until he has some knowledge to the contrary. He is not bound to keep his eyes constantly fixed to the sidewalk.''

■ There was ample evidence of Pioneer's negligence. Defendants knew that the street was being used by plaintiff and others, and that barricades and lights were needed to protect them from excavations and obstructions. Neither of them could close its eyes to the fact that an unguarded excavation created a dangerous situation. Lights were placed on each of the barricades and on the heavy mechanical equipment in the street, all of which were, according to plaintiff's evidence, somewhat removed from the site of the open trench.

■ ■ Did plaintiff act as a reasonably prudent person in view of the existing circumstances? The mere fact that she knew that excavations were being opened and closed continuously in the street did not, as a matter of law, require her to stay home from her work, or make travel upon the street negligence as a matter of law. The danger was not so apparent that, in the use of ordinary care commensurate with the circumstances, it was negligence *per se* for her to travel on the street. Its permitted use shows that danger from the work being done was not regarded as so apparent that one ought not to be allowed to encounter it. In traveling thereon, she was, therefore, bound to exercise reasonable care in view of all the circumstances, including her previous knowledge of the condition of the street and the darkness of the night. Her evidence is to the effect that she thought the workmen she saw engaged in the ditch would fill it in as other excavations had been filled, or give warning of its danger, if left unfilled. Her repeated statements that she was walking carefully indicated that she was cautious and circumspect.

Ordinarily Mrs. Hambrick had a right to assume that the ditch dug across a walkway, known to be in common use, would be filled in when the work was completed, or if left open would

be guarded by lights or a barricade. In falling into the excavation, she did the very thing the defendants anticipated would happen to her in the absence of proper warning.

When we fairly interpret the evidence in the light of the rule that all fair and reasonable inferences must be drawn in favor of the plaintiff, we agree with the trial court that the question of her contributory negligence was for the jury. It is apparent that she had reason to assume that the ditch had been closed, or would be guarded, if left unclosed. This is supported by the fact that but for the break in the water main, it would have been closed in the ordinary course of Pioneer's work. We are, therefore, unable to say that the verdict of the jury finding her free of contributory negligence is plainly against the evidence or without sufficient evidence to sustain that finding.

The evidence which warranted the verdict against Pioneer was also sufficient to support the verdict against the city, because the city could not delegate its positive duty with respect to the care of its streets to an independent contractor. The city had authorized the work and had constructive notice of the necessary excavations from the very nature of the work to be done. The dangerous situation created was inherent in the work and not merely collateral. Under the facts here, it also had actual notice of the defect.

In his "Notes on Municipal Corporations," 3rd. Ed., page 50, the late Professor Lile of the University of Virginia, has clearly and concisely stated the duties of a city with respect to its liability for acts of independent contractors.

"The doctrine most widely prevailing in the American courts is that it is primarily the duty of the city to maintain its streets in proper condition for public travel; that this duty is an *absolute and nonassignable one;* and that the city will not be allowed *under any circumstances* to evade this duty by a delegation of it to others.

"It follows that, notwithstanding the intervention of an independent contractor employed by the city, if the work contracted for *necessarily* constitutes an obstruction or defect in the street, *of such a nature as to render it unsafe or dangerous* for purposes of travel, unless properly guarded or protected, then the city must, *at its peril,* see that such guards and protection are supplied and maintained. Examples under this head would be, the digging of ditches in the street for laying gas, water or sewer pipes, or the piling of stone, brick, sand,

and other material for paving purposes, etc. Of such necessary obstructions as these, the city has notice *from the very nature of the work to be done.*

"The liability in such cases rests, not on the rule of *respondeat superior,* but on the positive and specific duty owed to the public—which duty, by the policy of the law, the city *may not delegate* to another, and thus free itself of responsibility in the premises. An analogous and familiar rule is found in the law of master and servant—under which the master is held to certain duties with respect to the personal safety of the servant, while the latter is in performance of his assigned work; and these duties the master is not permitted to delegate to independent contractors, or others, so as himself to escape liability for their nonperformance."

In Annotations on "Liability of Municipal Corporations and Their Licensees for Torts of Independent Contractors," 25 A. L. R., 426, *et seq.,* and 52 A. L. R. 1012, are exhaustive discussions of the above doctrine and a collection of cases. In 25 A. L. R., at page 427, this is said:

"The doctrine accepted by nearly all the American courts may be formulated thus: A municipal corporation which employs an independent contractor to perform work which will produce abnormally dangerous conditions, upon a street or other highway under its control, is liable for any injury which may be occasioned by his failure to take such precautions as are proper under the circumstances for the purpose of protecting travelers."

In 18 McQuillin on Municipal Corporations, 3rd. Ed., section 53.76, page 346, the doctrine is stated as follows:

"The person upon whom a statutory or positive duty is imposed cannot delegate in any manner the performance of that duty, so as to relieve himself from the responsibility for the performance of that duty. This applies where the contractee is a municipality. Consequently where there is a positive duty cast upon the municipal corporation it cannot escape liability by seeking to delegate the performance of such duty to an independent contractor. An illustration is the obligation to exercise ordinary care to keep public ways in a reasonably safe condition for public travel in the usual modes, which rests upon the municipal corporation, and this duty cannot be shifted to an independent contractor so as to relieve the municipality from liability therefor, and hence if a contractor undertakes

the improvement of a street, and doing so creates obstructions or excavations in the street, the municipality is liable for the negligence of the contractor in failing to guard properly such obstructions or excavations. '* * *'' To the same effect, see same author, Vol. 19, section 54.83, page 294, et seq.

In Moll on Independent Contractors' and Employers' Liability, section 139, pages 243-244, the general rule is thus summarized by the author:

"A municipality 'certainly cannot relieve itself from the duty which rests upon it by transferring that duty to a contractor. The corporation must see that the public is properly protected, and if the contractor fails to perform that duty the city is responsible for the resulting damages.' The city will be responsible for the acts of an independent contractor if the matter involved in his contract is one of absolute duty owed by the city to an individual or the work is intrinsically dangerous, or when properly done creates a nuisance."

In accord therewith are 17 M. J., Streets and Highways, § 133, p. 637; 63 C. J. S., Municipal Corporations, § 766 d (3), p. 61; and 38 Am. Jur., Municipal Corporations, § 600, p. 296.

Counsel for the parties have made our task less difficult by excellent briefs. It will serve no useful purpose to review and discuss the many cases cited. Decisions in cases from other jurisdictions relating to the liability of a muncipality for a defective condition in its street are not uniform. They are dependent upon the peculiar facts in each case, upon the pleadings, in some instances upon the statutes of the particular state, and in other instances upon a refusal to recognize the exception to the general rule of liability for acts of an independent contractor, where a municipality is involved under facts similar to those present here.

We approve the generally accepted doctrine for the reasons stated by Professor Lile.

Upon a consideration of the whole evidence and the law involved, we are of opinion that the judgment of the trial court should be affirmed, and it is so ordered.

*Affirmed.*