## Staunton

CITY OF RICHMOND v. JAMES BRANCH, ET. AL.

September 11, 1964.

Record No. 5771.

Present, All the Justices.

*James A. Eichner, Assistant City Attorney (J. E. Drinard, City Attorney, on brief), for the plaintiff in error.*

*Frank C. Maloney, III (Allen, Allen, Allen & Allen, on brief), for defendant in error, James Branch.*

*Edward A. Marks, Jr. (M. Wallace Moncure; Sands, Anderson, Marks & Clarke; Moncure & Cabell, on brief), for defendants in error, John S. Talley and Ellis R. Flanary, t/a Talley & Flanary, and Talley & Flanary, Incorporated.*

*James C. Roberts (Tucker, Mays, Moore & Reed, on brief), for defendant in error, Jacob M. Van Doren, individually and t/a, &c.*

SPRATLEY, J., delivered the opinion of the court.

On February 14, 1959, at approximately 8:15 p. m., as James Branch was driving his automobile along Kane street, in the city of Richmond, a front wheel of his car suddenly dropped into a hole in the street. There were no lights, flares, or flame pots showing any depression in the street, and there were no barricades placed as a warning to travelers. Branch had the headlights of his car burning brightly; but the night was dark and a slight rain was falling. He got out of his car, observed that its right front wheel had sunk about 13 to 15 inches in the hole, and was so deeply sunk in muck and water that he had to obtain assistance to get out. The car was damaged, and Branch suffered severe personal injuries.

Branch duly notified the city of Richmond of the accident and filed a claim for damages. The City denied liability. Thereupon, Branch instituted this action against the city of Richmond, hereinafter referred to as City; John S. Talley and Ellis R. Flanary, individually and trading as Talley and Flanary; Talley & Flanary, Incorporated; and Jacob M. Van Doren, individually and trading as Van Doren Construction Company, to recover damages for personal injuries sustained by him in the accident.

The city of Richmond again denied liability, and filed a cross-claim against its co-defendants, alleging that it was entitled to be indemnified by them if it was held liable for damages arising out of the performance of a contract it had with Talley and Flanary, Incorporated, successors to Talley and Flanary, partners, general contractors, and Jacob M. Van Doren Construction Company, a subcon-

tractor of Talley and Flanary, Incorporated, for the construction of a sewer line under Kane street. Talley and Flanary as partners and as a corporation, hereinafter referred to as Talley and Flanary, filed a cross-claim against City and Van Doren Construction Company for indemnification in the event they were held liable to Branch. The Jacob M. Van Doren Construction Company, hereinafter referred to as Van Doren, demurred to each of the cross-claims against it.

The trial court declined to consider the cross-claims and the demurrers until a verdict had been reached on the cause of action asserted by Branch. The case then came on to be heard on the merits of Branch's claim against the defendants. The evidence was heard by the court, a jury being waived.

The court found that although negligence of Van Doren "in improperly replacing the earth in the ditch" caused the depression in the street, since Van Doren's work had been completed and accepted by the City prior to the accident, Branch was not entitled to recover damages from either Talley and Flanary or from Van Doren; that Branch was entitled to recover from the City for its negligence, and in failing to keep and maintain the street in a safe condition for travel; and fixed the damages of Branch at $6,500.00. Judgment was entered accordingly.

In its order, the court expressly declined to pass upon the issues raised by the cross-claims on the ground that they did not come within Rule of Court 3:9; reserved such issues for future determination; and dismissed them without prejudice.

The evidence is without material conflict, and may be summarized as follows:

On June 17, 1958, the City entered into a contract with Talley and Flanary, partners, covering sewer construction work at eighteen different locations throughout the City. The original contract was amended on September 4, 1958, by adding a provision for the installation of a sewer one block long from Selden street to a manhole in the middle of Kane street. The original contractors, who later formed a corporation known as Talley and Flanary, Incorporated, subcontracted this additional work to Van Doren. Van Doren began work on his contract on September 12, 1958; Kane street was excavated; sewer pipes installed; and the ditch was then filled in with material taken from the excavation. The replaced earth was compacted by "puddling," a process which involves adding water to the replaced

dirt in the ditch in order to allow it to settle. The foreman for Van Doren said that the work was performed in a manner similar to the method commonly used by the Van Doren Company, in accordance with the specifications of the contract of the City, and with the approval of the officials of the City charged with supervising and inspecting the work.

J. A. Gilman, a construction engineer for the City, and C. R. West, its construction inspector, stated that they supervised and inspected the work during its progress. West said he was present on the job 90% of the time, and watched the backfilling and "puddling" operations; that Van Doren complied with the specifications of his contract; and that the later "settling" of the street could have been caused by "a lot of things" other than improper "puddling." Gilman said he witnessed a portion of the backfilling and "puddling" operations; that such an operation was an acceptable method of "consolidation on a job of this sort;" and that the operations conducted by Van Doren were properly carried out according to specifications as far as he could see. He was unable to say what caused the street to settle.

The work in Kane street was completed by Van Doren about six days prior to September 22, 1958. The refilling in the sewer trench had been allowed to settle, and on September 22, 1958, employees of the City took charge of the trench line for refilling, and for repaving the street surface. A work crew of the City dug the trench about 6 inches deep; put in 6 inches of crushed stone; "rolled," that is pressed, the stone down 2 inches from the top of the street with a truck; then put 2 inches of asphalt on top of the stone; and "rolled" that down. No test for compaction was thereafter made.

In November or December of 1958, about four months prior to the accident, Joseph Hubbard, a 61-year-old ditch digger employed by the Utilities Division of the Department of Public Works of City, said he noticed that the paved area on Kane street over the sewer line had begun to sink. He lived only a half block away from the scene of the accident and passed by it each morning en route to work. He said that two weeks prior to the accident, the street had sunk about "eight to twelve inches." On February 14, 1959, in passing along the street, he saw that the surface over the sewer line had gradually caved in over an area about 2 feet wide and 15 inches deep, extending to the edge of the hard surface. He placed a carpenter's sawhorse, which he found nearby, in front of the caved in area, so traffic could move around on the left side of the street. However,

as we have stated, the sawhorse was not in the street when Branch drove down it.

Edward A. Dooley, a Richmond police officer, testified that Kane street was patrolled "quite frequently" because there were a "lot of stolen cars and abandoned bikes in there." He said that he had driven his patrol car along that street in the same direction as that taken by plaintiff about 5:00 o'clock on the afternoon of February 14, 1959, and he did not see the caved in area, nor did the wheels of his car sink in the street.

There was evidence that before the accident there had been a considerable amount of rainfall in Richmond, the exact amount falling between February 13-14 being .87 of an inch.

All of Van Doren's work was paid for prior to October, 1958, except a retainage fee of 10%, which was paid in January, 1960, before the institution of this proceeding.

The City contends that: (1) the evidence was insufficient to sustain the finding that it was negligent; that (2) the court erred in holding that Van Doren was immune in this proceeding from liability for its negligence; and that (3) the court erred in refusing to decide the issues raised in its cross-claim.

## I

The evidence shows that Van Doren's work in Kane street was done under the supervision and inspection of the City; that it was performed according to the specifications of his contract; and that City had notice of the condition of the street not only while Van Doren's work was being performed, but when its employees took over the job of refilling and repacking the sewer trench and re-paving the street above.

It is settled in Virginia, that it is the duty of a city to keep and maintain its streets in repair and in safe condition for public travel. The duty is positive and non-delegable. Although the city is not an insurer against accidents, it is liable for negligence in the performance or non-performance of the duty imposed upon it, and it must respond in damages to any one who, without fault on his part, is injured as a result of its failure to observe its duty. *City of Norfolk v. Hall*, 175 Va. 545, 552, 9 S. E. 2d 356 and cases cited; *Pioneer Construction Co. v. Hambrick*, 193 Va. 685, 692, 693, 70 S. E. 2d 302; 17 Mich. Jur., Streets and Highways, § 116, pages 610, 611; 63 C. J. S., Municipal Corporations, § 766 d. (3), page 61; 38 Am. Jur., Municipal Corporations, § 600, page 296.

There is ample evidence that City failed to maintain and keep Kane street safe for travel, and that it had notice of the unsafe condition from the very nature of the work done under its supervision, and from its later participation in the project.

## II

It is the general rule that, "except under peculiar circumstances which do not exist in this case, the independent contractor is not liable for an injury to person or to property of one not a party to the contract, occurring after the independent contractor has completed the work and turned it over to the owner or employer, and the same has been accepted by him, though the injury resulted from the contractor's failure to properly perform his contract." *McCrorey* v. *Thomas*, 109 Va. 373, 379, 63 S. E. 1011; *Richmond* v. *Jackson*, 118 Va. 674, 681, 88 S. E. 49; *Pioneer Construction Co.* v. *Hambrick, supra*, 193 Va. 685, 693, 694; Shearman and Redfield on Negligence, Vol. 2, Rev. Ed., § 267, page 675; 9 Mich. Jur., Independent Contractors, § 20, page 640; 27 Am. Jur., Independent Contractors, § 37, page 514.

See also *Russell* v. *Arthur Whitcomb, Inc.*, 100 N. H. 171, 121 A. 2d 781; *Reynolds* v. *Manley*, 223 Ark. 314, 265 S. W. 2d 714; *Armstrong* v. *Tulsa*, 102 Okla. 49, 226 P. 560; "Contractor-Liability To Third Persons," 13 A. L. R. 2d 217 *et seq.*, and 58 A. L. R. 2d 874, 878, 894 and cases cited.

There were no peculiar circumstances here showing that there was anything inherently or imminently dangerous in constructing the sewer line. This case has not been shown to come within any exception which would take it out of the general rule. We are not unmindful that there is authority holding to the contrary of the general rule; but such authority is largely dependent upon the facts of the particular case, the pleadings, and the local statutes involved.

## III

This brings us to the question whether City is entitled to proceed in this action on its cross-claim for indemnity, or required to bring a separate action therefor. The City first contended that it was entitled to proceed by virtue of the provisions of § 10.04 (a) of its Charter. After the court pointed out that the Charter provisions were inapplicable, City relied on Rule of Court 3:9, which reads as follows:

"A defendant may, at his option, plead as a cross-claim any cause

of action that he has against one or more other defendants growing out of any matter pleaded in the notice of motion for judgment. The court in its discretion may order a separate trial of any cause of action asserted in a cross-claim."

It will be observed that there are two requirements to an application of Rule 3:9: (1) The cause of action must be one which the defendant "has" at the time of filing his cross-claim; and (2) The cause of action must grow out of a "matter pleaded" in the motion for judgment.

City had no cause of action against its co-defendants at the time of the institution of this suit. In its cross-claim, it denied that it was liable in damages for any injuries suffered by the plaintiff, Branch. It asserted that under a contract with its co-defendants, the co-defendants agreed to "indemnify and save it harmless against liabilities from injuries to persons or property arising out of the performance" of the sewer project. It further alleged that, "if the plaintiff is entitled to any recovery, * * * said city should not be required to pay any part thereof; but that all of such recovery should be paid by one or more of the other defendants here." In other words, it based its right to indemnification upon the contingencies or possibilities that it would be required to compensate Branch for his injuries.

The right to indemnification arises only where there has been actual loss or damage. Here, the City had not suffered any loss or damage at the time it filed its cross-claim. It was not subject to actual loss or damage, unless and until the plaintiff recovered and collected from it. Moreover, the plaintiff had no interest whatever in any litigation between the defendants. He was not required to merely sit by and witness litigation between them before his claim could be finally determined.

In *American National Bank* v. *Ames*, 169 Va. 711, 748, 194 S. E. 784, we said:

"It is uniformly held that there can be no recovery on an indemnity obligation where there has been no actual loss or damage." 27 Am. Jur., Indemnity, §§ 20 and 21, pages 469, 470.

The subject of cross-complaints is fully treated in 71 C. J. S., Pleading, §§ 168, 176, pages 346, 359 and in 41 Am. Jur., Pleading, §§ 256, 261, pages 473, 475.

It is recognized that the provisions of the statutes of the several States relating to the filing of cross-claim vary, and that the general

purpose is to settle in a single suit as many conflicting claims as possible, provided there is no undue confusion of issues.

In North Carolina, cross-claims are not allowed unless they have "such relation to the plaintiff's claim as that their adjustment is necessary to a full and final determination of the cause." *Fleming* v. *Carolina Power & Light Co.*, 229 N. C. 397, 50 S. E. 2d 45, 50.

See also *Liebhauser* v. *Milwaukee Electric Ry. & Light Co.*, 180 Wisc. 468, 193 N. W. 522, 43 A. L. R. 870, 877.

In *Deneau* v. *Beatty*, 195 Misc. 649, 91 N. Y. S. 2d 190, the court held that a cross-claim could not be used "to shift the ultimate liability for plaintiff's damages from the party who is guilty of only passive wrongdoing, to the party who is actively responsible," since the cause of action mentioned in the cross-claim could not come into existence until the plaintiff had recovered against and collected from the original defendant.

For the foregoing reasons, and under the principles stated, the trial court correctly held that Rule of Court 3:9 did not permit the adjudication of the cross-claims under the circumstances of this case.

We find no error in the rulings of the trial court, and the judgment appealed from is affirmed.

*Affirmed.*