64 F.3d 659
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
STEWART TITLE GUARANTY COMPANY, Plaintiff-Appellant,
v.
VIRGINIA COMMONWEALTH TITLE COMPANY, a Virginia Corporation;
Linda Morewitz, Defendants-Appellees,
Gerald D. Robertson, Defendant & Third Party Plaintiff-Appellee,
and
Nationsbank of Virginia, N.A., formerly known as Sovran
Bank, N.A., Defendant.
 No. 94-2630.
 United States Court of Appeals, Fourth Circuit.
 Argued June 5, 1995.
Decided Aug. 23, 1995.
 
 ARGUED: Gary Alvin Bryant, WILLCOX & SAVAGE, Norfolk, VA, for Appellant. Charles Malcolm Lollar, HEILIG, MCKENRY, FRAIM & LOLLAR, P.C., Norfolk, VA, for Appellees. ON BRIEF: Philip G. Denman, WILLCOX & SAVAGE, Norfolk, VA, for Appellant. Peter S. Lake, HEILIG, MCKENRY, FRAIM & LOLLAR, P.C., Norfolk, VA, for Appellees.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, ERVIN, Chief Judge, and MOTZ, Circuit Judge.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 Stewart Title Guaranty Company ("Stewart Title") appeals from the trial court's judgment in favor of defendants Virginia Commonwealth Title Company ("VCTC"), Linda Morewitz, and Gerald Robertson. A bench trial was held before the magistrate judge[1] who found that the negligence of Robertson, as well as the negligence of Morewitz, in her capacity as a notary and employee of VCTC, were not the proximate cause of loss to Stewart Title. In particular, the magistrate judge found that Stewart Title was unable to prove its damages, because it failed to demonstrate that the deed of trust executed by the power of attorney was unenforceable. Because that finding is not clearly erroneous, we affirm.
 
 I.
 
 2
 An original deed of trust dated August 5, 1991, and bearing the names of David Murray and his wife, Anne Murray, was delivered to Gerald Robertson and Vernon Roane, trustees for American Industrial Loan Association ("AILA"). David Murray signed the document in his own behalf, and on behalf of his wife under a power of attorney. The deed of trust was executed to secure a loan in the amount of $146,230 from AILA. Both the deed of trust and the power of attorney were recorded on August 12, 1991.
 
 
 3
 After closing the loan, Gerald Robertson, the closing attorney, forwarded all the documents to AILA. AILA subsequently informed Robertson that the power of attorney was unacceptable and that Mrs. Murray's personal signature would be required on the deed of trust. Robertson informed Mr. Murray, who agreed to bring his wife by Robertson's office to sign a correction deed of trust.
 
 
 4
 On August 16, 1991, Mr. Murray appeared with a woman Robertson assumed to be Murray's wife. Robertson admitted that he had never met Anne Murray and that he took no affirmative steps to identify the woman. Robertson testified that no one witnessed the signing of the correction deed of trust, because Robertson was called out of the room at the time the documents were about to be signed. No one else was in the room with Murray and the unidentified woman. When Robertson returned, the deed of trust had been signed.
 
 
 5
 Robertson forwarded these documents across the street to Linda Morewitz, a notary, at VCTC's office. Morewitz was an employee of both Robertson and VCTC. She issued title policies as an employee of VCTC and prepared closing documents for Robertson as his secretary. It was Robertson's policy to send Morewitz a package of closing documents without making any representations as to the authenticity of the signatures. Morewitz admits she merely notarized the signatures on the Murray closing documents pursuant to Robertson's policy, although she did not see anyone sign the correction deed of trust and no one attested in her presence that they had signed the document. The correction deed of trust was recorded on August 16, 1991.
 
 
 6
 On February 7, 1992, David Murray committed suicide and the loan went into default. In March 1992, Mrs. Murray filed for bankruptcy. Jonathan Hauser, AILA's attorney, testified that AILA filed a motion for relief from the stay in her bankruptcy proceeding, seeking an order to foreclose on the real property securing the loan. Hauser testified that as a result of discovery in that proceeding to determine whether Mrs. Murray's signature on the correction deed of trust was genuine, AILA had "determined that Mrs. Murray's signature was a forgery." Mrs. Murray also testified at trial that she had signed neither the correction deed of trust nor the power of attorney used to execute the original deed of trust. Based upon AILA's conclusion that the correction deed of trust was invalid, the motion for relief from the stay in bankruptcy was dismissed with prejudice to AILA. According to oral argument, Stewart Title indicated that the motion may have been voluntarily dismissed by AILA. Regardless, there was no judicial determination of the validity of Mrs. Murray's signature on the correction deed of trust or power of attorney by the bankruptcy court.
 
 
 7
 On November 17, 1992, AILA brought suit against Stewart Title to recover under the title insurance policy issued by VCTC, as the agent of Stewart Title. The policy, underwritten by Stewart Title, insured AILA against the invalidity and unenforceability of the deed of trust. The policy reflected that both the recorded correction deed of trust and the original deed of trust were insured. On March 4, 1993, Stewart Title settled with AILA by paying $173,646.70 to AILA under the title policy. As part of the settlement, AILA assigned all of its claims against the defendants to Stewart Title.
 
 
 8
 In August, 1993, Stewart Title brought this suit against Robertson, Morewitz, and VCTC. Stewart Title alleged that Robertson and Morewitz were liable for the loss caused by their negligent failure to verify Anne Murray's identity and by their negligent handling of the notarization process. Stewart Title also alleged that VCTC, through its agent Morewitz, was liable under the Underwriter's Agreement between Stewart Title and VCTC.
 
 
 9
 At the close of plaintiff's evidence, the defendants argued that Stewart Title had failed to establish the uncollectibility of the original note as part of its prima facie case, thus entitling the defendants to judgment as a matter of law. The issue of collectibility had not been raised prior to trial. Stewart Title argued that the issue of collectibility was relevant to mitigation of damages, rather than to its presentation of a prima facie case of negligence. Nevertheless, the court granted Stewart Title leave to reopen its case to present evidence that the lender was unable to collect from the estate. The only witness available at that time was Jonathan Hauser, AILA's attorney.
 
 
 10
 Hauser testified that he had attended a debts and demand hearing involving the estate of David Murray on February 2, 1993, and had, thereafter, filed a claim against the estate. Hauser testified that he had heard that the estate of David Murray had insufficient assets to pay taxes and administrative costs, let alone secured and unsecured claims. He filed AILA's claim as a general unsecured claim. He presented the Commissioner of Accounts with all the loan documents, including the deed of trust. On cross-examination, Hauser was presented with the report by the Commissioner of Accounts on Mr. Murray's estate, filed with the Newport News Circuit Court in August 1993, listing AILA's claim as a secured claim.
 
 
 11
 After presentation of the defendants' case, the court ruled in favor of the defendants on all counts. The court found that Robertson's failure to verify Mrs. Murray's identity did not constitute negligence, but that Robertson was negligent in establishing a policy by which Morewitz improperly could acknowledge signatures. The court also found that the way in which Morewitz had acknowledged Anne Murray's signature was negligent. Nevertheless, the court found that Robertson's and Morewitz's negligence did not cause loss to Stewart Title; and if there had been loss, it was due solely to the fraud of David Murray. The court held that Stewart Title failed to prove that the original deed of trust was unenforceable because it failed to present sufficient evidence that the power of attorney had been forged. In addition, the court concluded that Stewart Title failed to prove that the debt could not be collected from the estate of David Murray. Finally, the court ruled that the negligence of Morewitz could not be attributed to VCTC, because it had occurred while Morewitz was acting on behalf of Robertson, not on VCTC's behalf.
 
 
 12
 After the court announced these findings in favor of the defendants, Stewart Title requested that the court reopen the case and accept an affidavit from Stephen Buis, the court-appointed administrator of David Murray's estate, which indicated that the estate was insolvent.
 
 
 13
 The magistrate judge declined to reopen the case, and this appeal followed.
 
 II.
 
 14
 "To constitute actionable negligence there must be a duty, a violation thereof, and a consequent injury." Trimyer v. Norfolk Tallow Co., 66 S.E.2d 441, 443 (Va.1951).[2] A prima facie case is established if the plaintiff demonstrates that a duty existed which was breached or neglected, and the breach or neglect was a proximate cause of loss. Hendrix v. Daugherty, 457 S.E.2d 71, 74 (Va.1995). In Hendrix, the Virginia Supreme Court stated that "[e]ach of these elements is indispensable if the plaintiff is to establish a prima facie case." Id.
 
 
 15
 Establishing a prima facie case, however, is not sufficient to enable a plaintiff to prevail. In Virginia, the "burden is upon plaintiff to produce evidence of preponderating weight from which the trier of fact can find that the defendant[ ][was] guilty of negligence which was a proximate cause of the event resulting in injury." Lawrence v. Snyder, 326 S.E.2d 690, 692 (Va.1985); Page v. Arnold, 314 S.E.2d 57, 61 (Va.1984). The evidence must prove more than a probability of negligence. Id. The burden of proof remains on the plaintiff at all times, never shifting to the defendant. Myers v. Sutton, 189 S.E.2d 336, 338 (Va.1972). In a negligence or breach of contract action, it is a "well-established rule that a plaintiff has the burden to prove the amount of damages with reasonable certainty." Estate of Taylor v. Flair Prop. Assoc., 448 S.E.2d 413, 416 (Va.1994). This burden must be sustained by a preponderance of the evidence. Id. at 417.
 
 
 16
 One of the elements that Stewart Title must prove by a preponderating weight, therefore, is that it sustained a loss. Virginia law supports the general principle that in a negligence or breach of contract action, the plaintiff must show "actual loss or damage" before it can collect from a defendant. Allied Productions, Inc. v. Duesterdick, 232 S.E.2d 774, 776 (Va.1977). In Allied Productions, an attorney malpractice case, the client suffered a default judgment in the form of a claim for indemnity. Id. The client alleged that the judgment was the proximate result of his lawyer's negligence. Id. The client sought to have the attorney held responsible for the debt owed to the judgmentcreditor. Id. However, the Virginia Supreme Court held that until the client made a payment on the debt, he "has suffered no actual loss or damage." Id. The court relied upon Staples' Ex'ors v. Staples, 7 S.E. 199, 203 (1888): "In cases of negligence, the extent of the damages sustained by the complainant must be affirmatively shown.... When a debt is alleged to have been lost by the attorney's negligence, it must be shown that it was a subsisting debt, and that the debtor was solvent." In other words, it is not sufficient for a client to show that there is a judgment against him resulting from his attorney's negligence. The client must also show that he in fact has suffered actual loss, rather than showing remote, speculative, or contingent damages. Campbell v. Bettius, 421 S.E.2d 433, 437 (Va.1992); see Techdyn Systems Corp. v. Whittaker Corp., 427 S.E.2d 334, 339 (Va.1993) (in the context of a breach of contract action, "lost profits that are speculative, remote, uncertain, or contingent are not recoverable"); see also Hendrix v. Daugherty, 457 S.E.2d 71, 74 (Va.1995) (in an attorney malpractice action under Virginia law, the client must prove that he would have recovered on his claim but for the attorney's negligence); Stewart v. Hall, 770 F.2d 1267, 1270 (4th Cir.1985) (same).
 
 
 17
 Similarly, in the context of indemnity actions, the Virginia Supreme Court has "uniformly held that there can be no recovery on an indemnity obligation where there has been no actual loss or damage." American National Bank v. Ames, 194 S.E. 784, 797 (Va.1938), cert. denied, 304 U.S. 577 (1938); see also A/S Ludwig Mowinckles Rederi v. Tidewater Constr. Corp., 559 F.2d 928, 934 n. 8 (4th Cir.1977) (recognizing under City of Richmond v. Branch, 137 S.E.2d 882 (Va.1964), and American National Bank, 194 S.E. 784, 797, cert. denied, 304 U.S. 577 (1938), that "there is no right to indemnification until there has been actual loss or damage suffered by the indemnitee"); Jean Appleman, Insurance Law and Practice Sec. 5216, at 99 (West 1981) ("A title insurance policy is one of indemnity, so that the insured is entitled to recover only the actual loss which he has sustained"). In City of Richmond, the Virginia Supreme Court indicated that the city's right to indemnification had not arisen, because Richmond "had not suffered any loss or damage.... It was not subject to actual loss or damages, unless and until the plaintiff recovered and collected from it." Id. at 886.
 
 
 18
 Under Virginia law, therefore, Stewart Title had to prove actual loss or damage to prevail against the defendants. In particular, Stewart Title had to show both that it was unable to collect from the estate of David Murray on the underlying debt and that it was unable to foreclose under both the original deed of trust and the correction deed of trust. Without proving this by a preponderance of the evidence, Stewart Title's damages are only speculative and uncertain. See Estate of Taylor, 448 S.E.2d at 416 ("[P]laintiff is required ... to furnish evidence of sufficient facts to permit the trier of fact to make an intelligent and probable estimate of the damages sustained.").
 
 
 19
 Since Stewart Title stepped into the shoes of AILA, the trial court had to determine whether AILA had sustained an actual loss. After the bench trial, the court found that Stewart Title presented insufficient evidence that the power of attorney used to execute the original deed of trust was forged. As a result, the court concluded that Stewart Title failed to prove that the original deed of trust was invalid.
 
 
 20
 We find that the court did not commit clear error in reaching this conclusion.[3] "Under well-settled principles of appellate review, factual findings of a trial court are not reversed unless they are plainly wrong or without evidence to support them." Marefield Meadows, Inc. v. Lorenz, 427 S.E.2d 363, 366 (Va.1993). The record indicates that AILA never attempted to foreclose under the original deed of trust executed utilizing the power of attorney. After Robertson closed the loan with the power of attorney, AILA informed him that he needed to execute a correction deed of trust with Mrs. Murray's personal signature. The magistrate judge, however, correctly noted that
 
 
 21
 the forwarding sheet from AILA to Robertson was at least ambiguous on whether a power of attorney could be used, and the form or custom between AILA and Robertson permitted the use of powers of attorney and I also found that Robertson had no oral instructions not to accept power of attorney.
 
 
 22
 Additionally, the original deed of trust and the power of attorney had already been recorded. Nevertheless, pursuant to AILA's request, a correction deed of trust was executed by David Murray and a woman who was presumed to be his wife. This document was also recorded.
 
 
 23
 At the bench trial, Hauser, AILA's attorney, testified that in the summer of 1992, AILA had filed a motion for relief from the stay in Mrs. Murray's bankruptcy proceeding to foreclose on the real property. Hauser testified that as a result of discovery in that proceeding to determine the validity of her signature on the correction deed of trust, "we determined that Miss Murray's signature was a forgery." As a result of that "determination" by AILA, not by the bankruptcy court, the motion for relief of stay was dismissed with prejudice to AILA. AILA subsequently brought suit against Stewart Title under the title policy based upon the defective deed of trust.
 
 
 24
 AILA attempted to foreclose based solely upon the correction deed of trust. AILA never received a judicial finding that either deed of trust was invalid due to a forged signature of Anne Murray. The only testimony at the bench trial as to the validity of the signatures, other than AILA's "determination," was that of Anne Murray herself. More important, AILA's "determination" concerned the correction deed of trust only. As the magistrate judge recognized, AILA never stated the basis upon which it "determined that Mrs. Murray's signature [on the correction deed of trust] was a forgery." Absent a factual basis, the trial court found this testimony to be unreliable evidence that the signature on the correction deed of trust was forged.
 
 
 25
 Although the court accepted "with some reluctance" Mrs. Murray's testimony that she did not sign the correction deed of trust and did not accompany David Murray to Robertson's office on August 16, 1991, the court refused to "accept the fact that the power of attorney did not bear her signature." The court noted that these were not inconsistent findings, because it did not "need to believe she lied to question the invalidity of the power of attorney."
 
 
 26
 The record supports the trial court's finding. The magistrate judge thoroughly summarized Mrs. Murray's testimony, as well as her credibility and demeanor:
 
 
 27
 Mrs. Murray was totally subservient to her husband with regard to their financial affairs. She would sign without reading any document he put before her without questioning it. She didn't know what a promissory note was until after her husband's death, she never signed any tax returns. Apparently her husband completely was in control of the finances. And I observed the demeanor of Mrs. Murray as she testified. I concluded from her testimony that she was incompetent in handling business and financial affairs.
 
 The court continued:
 
 28
 Mrs. Murray was a babe in the woods with regard to financial matters. She either was unable to comprehend financial matters or she chose through the years to remain ignorant about them. She, generally speaking, didn't know what she had signed through the years.... She acknowledged that during her deposition she said in effect she would sign whatever her husband gave her to sign without questioning it, because she knew that he wouldn't do anything to harm her. For that reason I don't accept her testimony as saying she never signed the power of attorney....
 
 
 29
 In light of these findings, the magistrate judge stated: "I cannot accept and I do not accept her testimony that she never signed a power of attorney or the one that was presented." In the absence of any other testimony as to the invalidity of her signature on the power of attorney, the court concluded that "the power of attorney has not been proven to be invalid." The court noted that "it would have been quite simple in this case to offer some testimony which would permit me to draw the conclusion that the power of attorney was a forgery; such as signature exemplifications or some evidence which would permit me to conclude that this was a forged power of attorney." Based upon the court's rationale and support for its findings, we agree with the court that "considering the totality of Mrs. Murray's testimony and the lack of other evidence presented ..., there is insufficient evidence ... to find that the power of attorney was invalid." In fact, on cross examination, Mrs. Murray, in response to the question, "isn't it the case that you don't know if you've ever signed a power of attorney?" replied "That's correct. I don't know." The trial court's conclusions, therefore, that Stewart Title failed to prove that the power of attorney was forged, and as a result that the original deed of trust was invalid, are not "plainly wrong or without evidence to support them." Marefield Meadows, Inc., 427 S.E.2d at 366.
 
 
 30
 Stewart Title has failed to prove that it sustained any loss. See Estate of Taylor, 448 S.E.2d at 416-17 (holding that plaintiff must prove by a preponderance of the evidence the amount of damages "with reasonable certainty"). There was no testimony that AILA ever attempted to foreclose on the deed of trust executed by means of the power of attorney. There was no judicial determination that the original deed of trust was invalid. There was no testimony other than Mrs. Murray's that the signature on the power of attorney was not hers. The court was not required to accept this testimony. It is the province of the trial court to evaluate the credibility of witnesses. See Fed.R.Civ.P. 52(a) ("[D]ue regard shall be given to the opportunity of the trial court to judge ... the credibility of the witnesses."). We may not substitute our judgment on factual issues for that of the magistrate judge unless, after a complete review of the record, we are "left with the definite and firm conviction that a mistake has been committed." Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1526 (4th Cir.1984) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). In the absence of such a conviction, we accept the conclusion of the trial court that the evidence failed to support a finding that the power of attorney was invalid. As a result, we agree with the court that there was insufficient evidence to indicate that the original deed of trust was unenforceable or that Stewart Title could not have successfully foreclosed under the original deed of trust on the real property.
 
 III.
 
 31
 We, therefore, affirm the court's ruling and hold that Stewart Title failed to prove by a preponderance of the evidence that the negligence of Robertson and Morewitz, both in her capacity as a notary and as an employee for VCTC, was the proximate cause of any loss to Stewart Title.
 
 AFFIRMED
 
 
 [1]
 By consent of both parties, the case was tried without a jury before a magistrate judge
 
 
 [2]
 Virginia law governs this diversity case
 
 
 [3]
 Because we find this issue to be dispositive, we do not address the other factual contentions raised on appeal