Jane Doe

    v.

Virginia Wesleyan College

    v.

Robert Roe

Case No. (Civil) CL14-6942-01

By Judge David W. Lannetti

June 20, 2015

Today the Court rules on multiple motions related to this case. The five motions before the Court are: (1) a Demurrer filed by Defendant Virginia Wesleyan College ("VWC") ; (2) a Demurrer filed by Defendant Robert

Roe; (3) a Motion To Strike filed by Plaintiff Jane Doe; (4) a Motion for Bill of Particulars filed by VWC; and (5) a Special Plea in Bar filed by Roe. The Court overrules in part and sustains in part VWC's Demurrer; overrules in part and sustains in part Roe's Demurrer; denies in part and sustains in part Doe's Motion To Strike; denies VWC's Motion for Bill of Particulars; and denies Roe's Special Plea in Bar. The Court articulates the reasons for its rulings herein.

## Background

Doe had recently begun her freshman year as a student at VWC in August 2012. (Compl. 2.) Doe alleges that on or about August 24, 2012, (*id.* ¶ 5), she was raped and sexually assaulted by Roe in a VWC dormitory, (*id.* ¶¶ 26-27), and that VWC is liable for the resultant damages. (*See generally id.*) Doe alleges that she attended an on-campus party (the "Party") "sponsored" by a VWC-employed orientation peer advisor, where she admits that she consumed alcohol offered to her. (*Id.* ¶¶ 12-13.) The alcohol available at the Party allegedly "was spiked with an agent designed to incapacitate [Doe and others] and render them vulnerable to sexual assault." (*Id.* ¶ 17.) VWC-employed security officers allegedly visited the Party at some point, observed "alcohol available for teenager consumption," and took no action. (*Id.* ¶ 15.) Doe allegedly left the Party with some friends, who were impaired, to help them get to their dormitory rooms. (*Id.* ¶ 21.) Doe alleges that Roe followed her and her friends after they left the Party and, once Doe's friends were back in their dormitory rooms, Roe assaulted Doe and "forced her back to his dorm room," where Doe alleges Roe raped and sexually assaulted her. (*Id.* ¶¶ 23-27.) Doe prays for judgment against VWC based on three counts: negligence, gross negligence, and fraud. (*See generally id.*)

VWC filed a third-party complaint against Roe, which it later amended, seeking indemnity and contribution.

VWC and Roe subsequently filed the motions that are the subject of this Opinion. After an opportunity to provide supporting briefs, the parties were before the Court for a hearing on the motions on April 23, 2015.

## Positions of the Parties

The record in this case is voluminous. Although the pleadings at issue are part of the record, the Court elects to highlight specific, relevant portions of the pleadings herein.

### A. *VWC's Demurrer*

VWC demurred to Doe's Complaint on ten grounds. VWC alleges that: (1) under Virginia Law, VWC did not have a duty to warn or protect Doe; (2) Doe's allegations belie her failure to warn claim; (3) Doe failed

to sufficiently plead her scope of employment claim; (4) Doe failed to sufficiently plead her breach of assumed duty claim; (5) the VWC student peer advisor's alleged conduct was not a proximate cause of Doe's alleged injuries; (6) VWC's hiring and retention of the peer advisor was not a proximate cause of Doe's alleged injuries; (7) the VWC security officer's alleged conduct was not a proximate cause of Doe's alleged injuries; (8) VWC's hiring and retention of campus security officers was not a proximate cause of Doe's alleged injuries; (9) Doe assumed the risk of injury or was contributorily negligent; and (10) the alleged fraud was not the proximate cause of Doe's alleged injuries. (VWC's Dem. 3-24.)

Doe filed a Memorandum in Opposition to VWC's Demurrer. (Memo. in Opp'n to VWC's Dem.) Doe presents five arguments in response to VWC's Demurrer: (1) VWC owed a legal duty to warn and protect Doe from third-party criminal acts or victimization (*id.* at 2-19); (2) failure to warn claims encompass inadequate warnings (*id.* at 19-20); (3) scope of employment issues are factual matters for the jury to resolve (*id.* at 20); (4) the breach of assumed duty claim is sufficient as pleaded (*id.* at 20-21); and (5) proximate cause, assumption of the risk, and contributory negligence are jury questions. (*Id.* at 21.)

## B. *Roe's Demurrer*

Roe demurred to VWC's Amended Third-Party Complaint, alleging that: (1) VWC has no claim for indemnity against Roe as a former student; (2) VWC has no claim for contribution against Roe as a former student; (3) VWC cannot prevail against Roe for breach of contract because the alleged contracts disclaim contractual liability; and (4) VWC is not entitled to attorney's fees. (Roe's Dem. 2-7.)

VWC filed a Response to Roe's Demurrer that addresses each of Roe's grounds. (VWC's Resp. to Dem.) For its express indemnity and breach of contract claims, VWC points to two contracts between Roe and VWC, a portion of Roe's VWC college application, and a college residential agreement. (*Id.* at 2.) VWC argues that it has an implied right to indemnification based on equitable considerations arising out of the circumstances of the case. (*Id.* at 3-4.) VWC also reasserts that its contribution and attorney's fees claims are proper. (*See generally id.*)

Subsequent to VWC's related Reply, Roe filed a Brief in Support of Demurrer. VWC then filed a Sur-reply to Roe's Brief in Support.

## C. *VWC's Motion for Bill of Particulars*

VWC's Motion for Bill of Particulars focuses on the negligent hiring claim asserted by Doe. VWC argues that Doe's Complaint fails to inform VWC of the nature of Doe's negligent hiring-retention claim. (Mot. for Bill of Particulars 2.) VWC's position is that it "is not in a position to fully

assess and respond to [Doe's] Complaint." (*Id.*) VWC requests that the Court order Doe to file a Bill of Particulars that: (1) identifies the "allegedly incompetent security guard"; (2) states whether VWC knew, or should have known, of the security guard's alleged incompetence; and (3) articulates how VWC's hiring of the security guard was the proximate cause of Doe's alleged injuries. (*Id.*)

Doe filed a Memorandum in Opposition to VWC's Motion for Bill of Particulars. (Memo. in Opp'n to Bill of Particulars.) Doe presents two arguments in her motion. (*Id.* at 2-3.) First, she states that her Complaint is sufficient under Rule 3:18 of the Rules of Supreme Court of Virginia. (*Id.* at 2.) Second, Doe asserts that the discovery process, and not a Bill of Particulars, is the appropriate mechanism for VWC to acquire additional information regarding the facts and information on which the Complaint is based. (*Id.* at 3-4.)

VWC replied to Doe's Memorandum in Opposition, challenging Doe's two arguments. (Reply to Memo. in Opp'n to Bill of Particulars 1-3.) VWC claims that the Complaint does not satisfy Virginia Supreme Court Rule 3:18 and points out that it is not aware of — and Doe does not cite — any case that stands for the proposition that a request for Bill of Particulars is inappropriate under the circumstances. (*Id.* at 2.) VWC, responding to Doe's argument that discovery would provide VWC with additional information, then states that "after months of pressing for additional information" via discovery, Doe has not provided information disclosing the factual bases of her claim. (*Id.* at 3.)

## D. *Roe's Special Plea in Bar*

Roe bases his Special Plea in Bar on the statute of limitations, claiming that VWC's complaint against him should be dismissed. (Special Plea in Bar 1.) Roe notes that, according to the Complaint, the alleged rape and sexual assault took place "on or about August 24 or 25 of 2012." (*Id.*) Doe filed her Complaint on October 3, 2014, more than two years after the alleged cause of action arose. (*Id.*) Roe asserts that, although there apparently is a tolling agreement between VWC and Doe (the "Tolling Agreement") that tolled the statute of limitations for the claim, the Tolling Agreement does not apply to him because he was not a party to the agreement. (*Id.* at 1-3.)

Roe's Brief in Support reinforces his argument that the Tolling Agreement "was not presented to Roe for consideration and, indeed, he is not a signatory to it and thus [he is] not in any way bound by it." (Br. in Supp. of Special Plea in Bar 2 (*citing VEPCO v. Wilson*, 221 Va. 979 (1981)).) Roe points out that, although "the statute of limitations for indemnity or contribution does not accrue until the one seeking indemnity or contribution makes payment or has judgment rendered against it," § 8.01-281(A) of the Code of Virginia allows VWC to sue Roe, if it desires to do so, for contribution or indemnity based on future potential liability. (*Id.*)

Roe argues that the court in *VEPCO* views a cause of action by the injured person against the alleged wrongdoer for whom contribution is sought as an "essential" element to seek contribution or indemnification from the alleged wrongdoer. (*Id.*) In this case, Roe argues that because he was not a party to the Tolling Agreement, the "essential" element articulated in *VEPCO* was not satisfied prior to when the statute of limitations ran. (*Id.* 2-3.)

VWC replied to Roe's Special Plea in Bar, arguing that "[t]he statute of limitations on an indemnification or contribution claim does not begin to run until the common obligation has been paid or discharged." (Resp. to Special Plea in Bar 1 (*citing Gemco-Ware, Inc. v. Rongene Mold & Plastics Corp.*, 234 Va. 54, 57, 360 S.E.2d 342, 344 (1987)).) VWC, therefore, asserts that its Third-Party Complaint against Roe is not barred by the statute of limitations.

### E. *Doe's Motion To Strike*

Doe has two primary arguments in her Motion To Strike. (Mot. To Strike.) First, she argues that there is no basis for VWC to claim either express indemnity or equitable indemnity, using three sub-arguments: (1) express indemnity is unavailable; (2) equitable indemnity is unavailable without an implied contract; and (3) equitable indemnity does not apply to intentional torts based on VWC's negligence. (*Id.* at 3-6.) Second, she asserts that VWC's attempt to seek contribution from an intentional tortfeasor is "*per se* impermissible by statute." (*Id.* at 6.)

VWC filed a response to Doe's Motion To Strike, articulating three arguments. (Resp. to Mot. To Strike.) First, VWC claims that because there are multiple contracts between VWC and Roe, VWC may seek indemnity from Roe. (*Id.* at 6.) Second, VWC asserts an implied right to indemnification. (*Id.* at 6-8.) VWC claims the right to indemnity arises because, assuming the allegations in the Complaint are true and VWC is found liable, VWC would be able to recover against Roe to the extent that its liability is based on a statutory or common law duty to warn or protect. (*Id.* at 7.) Additionally, if Doe prevails on her vicarious liability claim, VWC would be a "technical wrongdoer" entitled to indemnification from the actual wrongdoer, which VWC alleges is the VWC peer advisor, campus security officers, or Roe. (*Id.* at 8.) Third, VWC emphasizes that § 8.01-34 of the Code of Virginia does not bar its contribution claim. (*Id.* at 8-9.) VWC states that the limiting language in § 8.01-34 applies only to "participants" in the moral turpitude and that the only moral turpitude allegation against VWC is the fraud claim. (*Id.* at 8.) VWC argues that Doe must prevail on its fraud claim against VWC in order to preclude VWC's contribution claim. (*Id.* at 8-9.)

*Analysis*

A. *Legal Standard*

A demurrer tests the legal sufficiency of the claims stated in the pleading challenged. *Dray v. New Mkt. Poultry Prods., Inc.*, 258 Va. 187, 189, 518 S.E.2d 312, 312 (1999). The only question for the court to decide is whether the facts pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against the defendant. *Thompson v. Skate Am., Inc.*, 261 Va. 121, 128, 540 S.E.2d 123, 126-27 (2001). On demurrer, the court must admit the truth of all material facts properly pleaded, facts that are impliedly alleged, and facts that may be fairly and justly inferred from the alleged facts. *Cox Cable Hampton Rds., Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991). A demurrer does not admit the correctness of any conclusions of law. *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997). Even if imperfect, a complaint drafted such that a defendant cannot mistake the true nature of the claim should withstand demurrer. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993). The court will not consider any factual assertions outside the pleadings for purposes of a demurrer. *See* Va. Code Ann. § 8.01-273 (1950). If a court sustains a demurrer, it is within the court's discretion to allow leave to amend the Complaint, and such leave "shall be liberally granted in furtherance of the ends of justice." Va. Sup. Ct. R. 1:8.

Certain rules in the Rules of Supreme Court of Virginia apply to all proceedings. *See* Va. Code § 8.01-3. Accordingly, "[e]very pleading shall state the facts on which the party relies in numbered paragraphs, and it shall be sufficient if it clearly informs the opposite party of the true nature of the claim or defense." Va. Sup. Ct. R. 1:4(d). Although "[a]n allegation of negligence … is sufficient without specifying the particulars of the negligence," *id.* R. 3:18, a plaintiff still must allege facts sufficient to support each element of the claim, *Graves v. Mortg. Elec. Registration Sys.*, 2011 Va. Cir. lexis 97, at *14 (Fairfax Cnty., June 29, 2011).

Courts have discretion to require or permit a bill of particulars. Va. Sup. Ct. R. 3:7. Although a plaintiff is not required to plead in great detail, where the complaint does not provide enough detail for the defendant "to respond or prepare the case," the defendant may request a bill of particulars "to amplify" the plaintiff's claim(s). *Id.* In these instances, a court has discretion to grant a bill of particulars to "amplify any pleading." *Id.*

The moving party has the burden of proving the dispositive fact raised in a plea in bar. *Tomlin v. McKenzie*, 251 Va. 478, 480, 468 S.E.2d 882, 884 (1996). As with a demurrer, the facts contained within the complaint are considered true for purposes of a plea in bar. *Id.*

A court should sustain a motion to strike a defensive pleading if, assuming the facts in the answer are true, they are not sufficient to constitute

a bar to the action. *Casilear v. Casilear*, 168 Va. 46, 52, 190 S.E. 314, 316 (1937). Stated differently, "[a] motion to strike is in effect a motion for summary judgment, which is not to be granted if any material fact is genuinely in dispute." *Costner v. Lackey*, 223 Va. 377, 290 S.E.2d 818 (1982). If sustained, the court may allow amendment of the pleading. *See* Va. Sup. Ct. R. 1:8.

## Discussion

The Court has considered the five motions before the Court, related briefs, oral argument at the April 23, 2015, hearing, and applicable authorities. The Court now rules on the motions.

### A. *The Court Overrules in Part and Sustains in Part VWC's Demurrer*

The Court addresses each of VWC's Demurrer grounds below.

#### 1. *The Court Finds, Based on the Facts Alleged, That No Special Relationship Exists*

Doe asserts, *inter alia*, that VWC owed her a duty based on the existence of a special relationship between VWC and Doe, which allegedly required VWC to warn Doe about and/or protect Doe from the criminal acts of a third party. (*See generally* Compl. ¶¶ 46-56.) Specifically, VWC asserts that a special relationship was created, as a matter of law, by virtue of the college-student relationship (*id.* ¶ 45), an innkeeper-guest relationship (*id.* ¶ 53), and a business owner-invitee relationship. (*Id.* ¶ 45.) Doe actually asserts "a special relationship of guest and hotelier." (Comp. ¶ 53.) The Court does not agree that any such relationships exist based on the pleadings in this case.

##### a. *A Special Relationship Can Impose a Duty*

It is black-letter law that a negligence claim must fail if based on circumstances under which the law imposes no duty of care on the defendant. Doe alleges claims of both negligence and gross negligence, but the duties on which each is based are the same. *See Burns v. Gagnon*, 283 Va. 657, 668, 727 S.E.2d 634, 641 (2012) (" 'Negligence,' we have long said, 'is not actionable unless there is a legal duty, a violation of the duty, and consequent damage'." (*quoting Marshall v. Winston*, 239 Va. 315, 318, 389 S.E.2d 902, 904 (1990))).

> "Negligence in the air, so to speak, will not do." As Professor Prosser has emphasized, the statement that there is or is not a duty begs the essential question, which is whether the plaintiff's interests are entitled to legal protection from the defendant's conduct. " 'Duty' is not sacrosanct in itself, but

only an expression of the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection."

*Bradshaw v. Rawlings*, 612 F.2d 135, 138 (3d Cir. 1979) (quoting F. Pollock, *Law of Torts* 468 (13th ed. 1929); W. Prosser, *Law of Torts* 333 (3d ed. 1964)). A tort duty, therefore, can be viewed "simply as an obligation to which the law will give recognition in order to require one person to conform to a particular standard of conduct with respect to another person." *Id.*

In Virginia, a person generally does not have a duty to warn another about or protect another from the criminal acts of a third party. *Thompson*, 261 at 128-29, 540 S.E.2d at 127. "This is particularly so when the third person commits acts of assaultive criminal behavior because such acts cannot reasonably be foreseen." *Burdette v. Marks*, 244 Va. 309, 311-12, 421 S.E.2d 419, 420 (1992). Such a duty can arise as a matter of law, however, under certain situations. According to the Virginia Supreme Court, " '[t]here are narrow exceptions to this rule,' but the application of those exceptions 'is always fact specific and, thus, not amenable to a bright-line rule for resolution'." *Taboada v. Daly Seven, Inc.*, 271 Va. 313, 322-23, 626 S.E.2d 428, 432 (2006) (*quoting Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 106, 540 S.E.2d 134, 139 (2001)).

The plaintiff has the burden of establishing such a special relationship, either between the plaintiff and the defendant or between the third-party criminal actor and the defendant. *Commonwealth v. Peterson*, 286 Va. 349, 356, 749 S.E.2d 307, 311 (2013). A special relationship may exist as a matter of law or may arise from the facts of a particular case. *Yuzefovsky*, 261 Va. at 107, 540 S.E.2d at 139. "The law determines the duty, and the jury, upon the evidence, determines whether the duty has been performed." *Acme Markets, Inc. v. Remschel*, 181 Va. 171, 178, 24 S.E.2d 430, 434 (1943).

### b. *The Virginia Supreme Court Has Recognized Only a Limited Number of Special Relationships*

Although the Virginia Supreme Court, at times, has recognized the existence of special relationships, it has done so only in a limited number of situations that, for the most part, developed from a society much different than the one today. The Virginia Supreme Court has made it clear that some of the traditional special relationships are longstanding. *See, e.g., Burns*, 283 Va. at 670, 727 S.E.2d at 642 (characterizing the innkeeper-guest special relationship as "a holdover from medieval days"); *Taboada*, 271 Va. at 325, 626 S.E.2d at 434 (opining that the Court has "long recognized" the common carrier-passenger relationship and citing cases from more than a century ago). To properly evaluate whether the Court should find a special

relationship here, a brief review of the situations under which Virginia has recognized such relationships and some situations under which such relationships were unsuccessfully asserted is warranted.

### i. *Common Carrier-Passengers Relationship*

Virginia long ago recognized a special relationship between common carriers and passengers. *See, e.g., Hines v. Garrett*, 131 Va. 125, 137-38, 108 S.E. 690, 693-94 (1921); *Virginia R. & P. Co. v. McDemmick*, 117 Va. 862, 869-70, 86 S.E. 744, 747 (1915). A duty of care by the carrier was justified "because a passenger entrusts his safety to the carrier, who alone knows the condition of his vehicle and the dangers of the neighborhoods and environs through which the routes of travel may lie." *Taboada*, 271 Va. at 325, 626 S.E.2d at 434. This superior knowledge and control warranted imposition of a duty on a common carrier "to protect its passengers against violence or disorderly conduct on the part of its own agents, or other passengers and strangers, when such violence or misconduct may be reasonably expected and prevented, yet [the carrier] is not liable to an action for damages when it is not shown that the company had notice of any acts which justified the expectation that a wrong would be committed." *Virginia R. & P.*, 117 Va. at 870, 86 S.E. at 747.

The duty of care imposed on common carriers toward their passengers, therefore, requires them "so far as human care and foresight can provide … to use the utmost care and diligence of very cautious persons; and they will be held liable for the slightest negligence which human care, skill and foresight could have foreseen and guarded against." *Norfolk & Western Ry. v. Birchfield*, 105 Va. 809, 821, 54 S.E. 879, 883 (1906) (*quoting Connell v. Chesapeake & Ohio Ry.*, 93 Va. 44, 55, 24 S.E. 467, 468 (1896)).

### ii. *Innkeeper-Guest Relationship*

Analogous to the common carrier-passenger relationship, a guest at an inn entrusts his safety to the innkeeper and has little ability to control the environment in which he finds himself; the guest relies on the innkeeper to make the property safe and, based on the innkeeper's knowledge of the neighborhood, to take "reasonably necessary precautions" to ensure the guest's safety. *Taboada*, 271 Va. at 325, 626 S.E.2d at 434. In Virginia, an innkeeper, like a common carrier, has "a duty to take reasonable precautions to protect his guests against injury caused by the criminal conduct on the part of other guests or strangers, if the danger of injury by such conduct is known to the innkeeper or [is] reasonably foreseeable." *Id.* at 325-26, 626 S.E.2d at 434. Indeed, § 35.1-28(A) of the Code of Virginia supports the conclusion that such a duty rests upon the innkeeper, although, under subsection (E) of that statute, the parameters of that duty are a matter of common law. Va. Code Ann. § 35.1-28 (1950). The duty of care imposed on

an innkeeper toward its guests therefore — again like the common carrier — is a duty of "utmost care and diligence" to protect against the danger of injury caused by the criminal conduct of third parties on the innkeeper's property. *Id.* at 326, 626 S.E.2d at 434.

The Virginia Supreme Court has made it clear, however, that neither the common carrier nor the innkeeper is an absolute insurer of the passenger's or the guest's personal safety. *See, e.g., Norfolk & Western*, 105 Va. at 821, 54 S.E. at 883 (discussing common carrier duty); *Crosswhite v. Shelby Operating Co.*, 182 Va. 713, 716, 30 S.E.2d 673, 674 (1944) (discussing innkeeper duty). The Court notes that, subsequent to the *Crosswhite* case, the Virginia General Assembly amended § 15-1602 of the Code of Virginia to clarify that the statute "did not abrogate the duty or the liability imposed on innkeepers for personal injuries to guests by the common law." *Taboada*, 271 Va. at 322, n. 3, 626 S.E.2d at 432. Section 15-1602 now corresponds in all relevant respects to § 35.1-28(A) of the Code of Virginia. *Id.*

### iii. *Employer-Employee Relationship*

Virginia also has recognized the employer-employee relationship as a special relationship for tort duty purposes. *See, e.g., A.H. v. Rockingham Publishing Co.*, 255 Va. 216, 220, 495 S.E.2d 482, 485 (1998). This duty also applies to those hiring independent contractors. *A.H.*, 255 Va. at 218, n. 1, 495 S.E.2d at 484. An employer's duty to warn and/or protect an employee arises when the danger from a third-party assailant is known or reasonably foreseeable by the employer, which is similar to the common carrier and innkeeper duty. *Id.* at 222, 495 S.E.2d at 486. Although the determination of whether the facts support reasonable foreseeability normally is a matter for the fact finder, in certain cases the court can find as a matter of law that the facts are insufficient to raise a jury issue. *Id.* For instance, in *A.H.*, the court found that, in the case of a newspaper carrier who was sexually assaulted while delivering newspapers along his assigned route, "three prior sexual assaults on [company] carriers in various locations in the [city] in the five years preceding the assault on the plaintiff were insufficient to raise a jury issue of whether a sexual attack on the plaintiff was reasonably foreseeable." *Id.*

### iv. *Business Owner-Invitee Relationship*

Virginia has not extended the duty of care to warn and protect from third-party criminal acts applied in common carrier, innkeeper, and employer cases to business owners generally. *See, e.g., Wright v. Webb*, 234 Va. 527, 532, 362 S.E.2d 919, 922 (1987) ("[A] business invitee does not entrust his safety to a business invitor to the same extent a passenger does to a common carrier."). Rather, a business owner has a duty to an invitee only when the owner "knows that criminal assaults against persons are occurring, or are

about to occur, on the premises which indicate an imminent probability of harm to an invitee." *Id.* at 533, 362 S.E.2d at 922. The Court further held that, for the duty to be imposed, there must be "notice of a specific danger just prior to the assault." *Id.; see also Thompson*, 261 Va. at 130, 540 S.E.2d at 128 (stating that an "imminent probability" of harm is a heightened degree of foreseeability).

In addition, the Virginia Supreme Court has stated that, "in the context of a business owner and invitee special relationship, we will not impose liability for negligence based solely upon a background of previous criminal activity on the owner's property." *Taboada*, 271 Va. at 327, 626 S.E.2d at 435; *see also id.* (holding that the innkeeper-guest special relationship simply is not applicable to the potential duty of care owed to a business invitee).

### v. *Landlord-Tenant Relationship*

Virginia courts, at times, and often considering non-Virginia cases, have held that a landlord-tenant relationship can qualify as a special relationship. *See, e.g., Gulf Reston, Inc. v. Rogers*, 215 Va. 155, 159, 207 S.E.2d 841, 845 (1974) ("Several recent cases from other jurisdictions have recognized that, under certain circumstances, a landlord's appreciation of risk and harm from foreseeable criminal activities of third persons would impose upon him a duty to exercise reasonable care to provide adequate protection to his tenant, especially within those parts of the premises used in common by all the tenants."). The Virginia Supreme Court "has also held in several cases that there was not a special relationship between a landlord and a tenant as to give rise to a duty on the part of the landlord to protect a tenant from the criminal acts of third persons." *Kellerman*, 278 Va. at 512, n. 8, 684 S.E.2d at 804 (2009) (citing cases). The duty owed by a landlord to a tenant is similar to the duty owed by a business owner to a business invitee; a duty arises only where a landlord knows that there is an imminent probability of harm to his or her tenant. *Peterson*, 286 Va. at 357, 749 S.E.2d at 311-12.

The Virginia Supreme Court also has noted, "[I]n determining whether a duty exists, the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant must be taken into account. Imposition of a duty does not depend upon foreseeability alone." *Kellerman v. McDonough*, 278 Va. 478, 510, 684 S.E.2d 786, 803 (2009) (internal quotations omitted).

Although the Virginia Supreme Court has established a certain list of special relationships for purposes of imposing a tort duty, the Court has "exercised caution" in expanding this list to include new relationships. *Burns*, 283 Va. at 669, 727 S.E.2d at 642. Further, even under recognized special relationships, the imposed duty to warn of or protect from third-party criminal acts varies. As alluded to *supra*, for common carrier-passenger, innkeeper-guest, and employer-employee situations, the respective special

relationships impose a duty on the defendant to warn the plaintiff when the danger of third-party criminal acts is *known or reasonably foreseeable*; by contrast, for more recent special relationships recognized by the Virginia Supreme Court, like the business owner-invitee and landlord-tenant situations, the special relationship imposes a duty on the defendant to warn the plaintiff of third-party criminal acts only where the defendant knows about *an imminent probability of injury*. *Peterson*, 286 Va. at 357, 749 S.E.2d at 311-12. Stated differently, the duty imposed by more modern special relationships is more narrowly defined than the duty associated with more traditional special relationships.

### c. *The Virginia Supreme Court Is Not Likely To Find the College-Student Relationship To Be a Special Relationship*

The Virginia Supreme Court has not affirmatively decided whether to recognize the college-student relationship as a special relationship that would impose duties upon a college to its students. Whether phrased as the "college-student relationship" or the "university-student relationship," the argument as it relates to this type of special relationship is the same. *Commonwealth v. Peterson* involved wrongful death actions stemming from the tragic 2007 mass shooting by a university student at Virginia Polytechnic Institute and State University, also known as Virginia Tech. 286 Va. 349, 749 S.E.2d 307 (2013). The trial court instructed the jury, over objection, that a special relationship between the university and the student victims gave rise to a duty for the university to warn and/or protect the students, and the jury returned a verdict of $4 million per family. *Id.* at 354-55, 749 S.E.2d at 310. Each verdict subsequently was reduced to $100,000 pursuant to the Virginia Tort Claims Act. *Peterson*, 286 Va. at 355, 749 S.E.2d at 310. On appeal, the Virginia Supreme Court reversed, holding that "there simply are not sufficient facts from which this Court could conclude that the duty to protect students against third-party criminal acts arose as a matter of law." *Id.* at 359, 749 S.E.2d at 313. In so doing, the Court specifically "assumed *without deciding* that a special relationship exists." *Id.* at 357, 749 S.E.2d at 311 (emphasis added).

Of note, in *Peterson*, when the Virginia Supreme Court assumed without deciding that a college-student special relationship exists, the Court did not state which of the two levels of foreseeable harm, "known or reasonably foreseeable" or "an imminent probability of injury," applied, but rather found that there were insufficient facts to satisfy either standard. 286 Va. at 357-59, 749 S.E.2d at 311-13.

### i. *Today's College-Student Relationship Is Different Than It Was in the Past*

In deciding whether to grant special relationship status to the college-student relationship, the case of *Bradshaw v. Rawlings* is instructive. 612

F.2d 135 (3d Cir. 1979). The U.S. Court of Appeals for the Third Circuit, after characterizing the interests of the parties, examined the relationship between American colleges and their students as of 1979:

> Our beginning point is a recognition that the modern American college is not an insurer of the safety of its students. The authoritarian role of today's college administrations has been notably diluted in recent decades. Trustees, administrators, and faculties have been required to yield to the expanding rights and privileges of their students... . College students today are no longer minors; they are now regarded as adults in almost every phase of community life... . As a result of [societal changes], eighteen year old students are now identified with an expansive bundle of individual and societal interests and possess discrete rights not held by college students from decades past. There was a time when college administrators and faculties assumed a role *in loco parentis*. Students were committed to their charge because the students were considered minors. A special relationship was created between college and student that imposed a duty on the college to exercise control over student conduct and, reciprocally, gave the students certain rights of protection by the college. The campus revolutions of the late sixties and early seventies were a direct attack by the students on rigid controls by the colleges and were an all-pervasive affirmative demand for more student rights... . These movements, taking place simultaneously with legislation and case law lowering the age of majority, produced fundamental changes in our society... . Regulation by the college of student life on and off campus has become limited. Adult students now demand and receive expanded rights of privacy in the college life ... . College administrators no longer control the broad arena of general morals... . But today students vigorously claim the right to define and regulate their own lives... . Thus, for purposes of examining fundamental relationships that underlie tort liability, the competing interest of the student and of the institution of higher learning are much different today than they were in the past. The change has occurred because society considers the modern college student an adult, not a child of tender years... . The circumstances show that the students have reached the age of majority and are capable of protecting their own self interests.

612 F.2d at 138-40.

Specifically, the court characterized the *interests of the college student* as remaining free from bodily injury and being compensated for any such injury and the *interests of the college* "in the nature of its relationship with its adult students, as well as an interest in avoiding responsibilities that it is incapable of performing." *Bradshaw,* 612 F.2d at 138.

The Court finds that this "expansive bundle of individual and societal interests and … discrete rights" possessed by American college students in 1979 is still present today. Based at least in part on this rationale, other jurisdictions have found that the college-student relationship does not constitute a special relationship for tort liability purposes. *See, e.g., Booker v. Lehigh Univ.,* 800 F. Supp. 234, 237-41 (E.D. Pa. 1992); *Coghlan v. Beta Theta Pi Fraternity,* 987 P.2d 300, 312 (Idaho 1999); *Fisher v. Northwest State Univ.,* 624 So. 2d 1308, 1309-11 (La. App. 1993); *University of Denver v. Whitlock,* 744 P.2d 54, 62 (Colo. 1987); *Nero v. Kansas St. Univ.,* 861 P.2d 768, 778 (Kan. 1993); *Eiseman v. State,* 511 N.E.2d 1128, 1136-37 (N.Y. 1987); *Swanson v. Wabash Coll.,* 504 N.E.2d 327, 330-31 (Ind. App. 1987); *Beach v. University of Utah,* 726 P.2d 413, 416 (Utah 1986); *Baldwin v. Zoradi,* 176 Cal. Rptr. 809, 816 (Cal. App. 1981). Further, the U.S. District Court for the Western District of Virginia opined that "it is unlikely that Virginia would conclude that a special relationship exists as a matter of law between colleges and universities and their students." *Schieszler v. Ferrum College,* 236 F. Supp. 2d 602, 609 (W.D. Va. 2002).

ii. *The Virginia Supreme Court's Rejection of the Teacher-Student Relationship as a Special Relationship Indicates That the Court Is Unlikely To Accept the College-Student Relationship as a Special Relationship*

The Virginia Supreme Court recently held, in a case of first impression, that a high school principal-student relationship does not constitute a special relationship. *Burns,* 283 Va. at 669-70, 727 S.E.2d at 642-43. The student, on appeal, attempted to equate the principal-student relationship to the historic innkeeper-guest relationship. *Id.* at 670, 727 S.E.2d at 642-43. In rejecting this argument, the Court opined that the principal-student relationship, unlike the innkeeper-guest relationship, "has no history — deep-rooted or otherwise — in the common law." *Id.* at 670, 727 S.E.2d at 643. The student asserted that the principal was acting *in loco parentis* for the student, and the Court agreed: "By law, [the student's] parents had to send [the student] to school, where it was the responsibility of [the principal] and other school officials to supervise and ensure that 'students could … have an education in an atmosphere conducive to learning, free of disruption, and threat to person'." *Id.* at 671, 727 S.E.2d at 643. The Court went on to find that, consistent with the principal's common-law duty to supervise and care for the student, the principal's actions would need to be

unreasonable to justify liability. *Id.* The Court nevertheless held that there was no principal-student special relationship.

Consistent with the Virginia Supreme Court's resistance to expanding its list of special relationships and its decision not to include the teacher-student relationship among its recognized special relationships — despite acknowledging that the principal was acting *in loco parentis* for the student — this Court elects not to add the college-student relationship — where an *in loco parentis* relationship does *not* exist — to the list of special relationships.

The Utah Supreme Court aptly summarized the difference between the teacher-student relationship and the college-student relationship: "Elementary and high schools certainly can be characterized as a mixture of custodial and educational institutions, largely because those who attend them are juveniles. However, colleges and universities are educational institutions, not custodial." *Beach,* 726 P.2d at 419.

In light of the foregoing, the Court finds, as a matter of law, that the college-student relationship does not constitute a special relationship that would impose a duty on VWC to warn or protect Doe. The Court also finds that the allegations in Doe's Complaint, even if assumed to be true, fail to establish either an innkeeper-guest or business owner-invitee special relationship.

Even if this Court found that a special relationship existed, the analysis would not end there. As discussed *supra,* depending on the nature of the special relationship, Doe still would need to prove that harm from a third-party actor was either "known or reasonably foreseeable" to VWC or that VWC knew about "an imminent probability of injury" to Doe. The Virginia Supreme Court has noted, however, that it typically finds — as a matter of law — that facts similar to those relied upon by Doe failed to establish a duty to warn or protect a plaintiff from third-party criminal acts under either of these standards. *See Peterson,* 286 Va. at 358-59, 749 S.E.2d at 312 (citing cases and stating that "[i]n only rare circumstances has this Court determined that the duty to protect against harm from third party criminal acts exists").

The Court, therefore, finds, even assuming, *arguendo,* the existence of a special relationship, that Doe has not alleged sufficient facts in her Complaint to establish that VWC knew or should have known of an imminent probability of injury to Doe or that, under the more lenient standard, harm from Roe was known or reasonably foreseeable to VWC. Even if there were a special relationship, Doe's Complaint still would be insufficient to establish liability on the basis of a special relationship on Virginia's recognized list.

### d. *Specific Facts Can Give Rise to a Special Relationship*

As mentioned *supra*, the absence of one of the enumerated special relationships recognized by the Virginia Supreme Court does not end the analysis. "[P]arents, students, and the general community still have a reasonable expectation, fostered in part by colleges themselves, that reasonable care will be exercised to protect resident students from foreseeable harm." *Schieszler*, 236 F. Supp. 2d at 610 (*quoting Mullins v. Pine Manor College*, 389 Mass. 47, 449 N.E.2d 331 (1983)). Even without recognizing one of the special relationships alleged by Doe, the particular facts alleged in a case can give rise to a special relationship. *Id.* at 609; *see also Yuzefovsky*, 261 Va. at 107, 540 S.E.2d at 139 (holding that a special relationship "may arise from the factual circumstances of a particular case").

For instance, in *Burdette v. Marks*, the Virginia Supreme Court held that, where a victim was assaulted by a third party in the presence of an on-duty police officer who presumably was armed and, therefore, was capable of rendering assistance to the victim without being subjected to undue danger, a special relationship between the police officer and the victim was established. 244 Va. 309, 312-13, 421 S.E.2d 419, 421 (1982). The police officer "*knew or should have known* that [the victim] was in great danger of serious bodily injury or death" and, therefore, had a duty to protect the victim. *Id.* (emphasis added). Of note, establishing a special relationship based solely on the facts of the case, as opposed to a recognized special relationship category, is rare and typically can only be done under extreme circumstances. Based on the allegations in the Complaint, the Court finds that there are not sufficient facts to establish that VWC knew or should have known that Doe was in great danger of serious bodily injury.

Based on the foregoing, the Court finds that Doe's Complaint fails to sufficiently allege the existence of a college-student relationship, an innkeeper-guest relationship, a business owner-invitee relationship, or a special relationship that arose from the particular facts alleged here. Even assuming all of the facts pleaded in the Complaint to be true, the Court cannot conclude, as a matter of law, that VWC had a duty to warn or protect students against third-party criminal acts. The Court, therefore, sustains the demurrer because Doe failed to establish a duty for VWC to warn or protect Doe from a third-party criminal assault based on a special relationship.

### 2. *VWC's Request for the Court To Resolve Allegedly Contradictory Arguments Is Not an Issue for the Court To Resolve on Demurrer*

VWC states that alleging negligence and gross negligence based on a failure to warn, and then providing supposed examples of when VWC warned the students, is contradictory and warrants sustaining a demurrer on that basis. (VWC's Dem. 13-14.) The Court does not agree. The Court

is not in a position to decide whether the allegedly contradictory statements are in fact contradictory because arrival at such a conclusion requires a factual determination. Whether these alleged examples of warnings cure or bar any negligence or gross negligence claims is an issue for the fact finder to decide upon full knowledge of the facts and arguments of the parties. The Court overrules VWC's demurrer on this ground.

### 3. *Doe Sufficiently Pleaded Her Scope of Employment Claim*

If a plaintiff alleges the existence of an employer-employee relationship, such a showing creates a presumption of vicarious or *respondeat superior* liability and shifts the burden to the employer to rebut the presumption that the employee was acting within the scope of employment at the time of the alleged act. *Majorana v. Crown Cent. Petroleum Corp.*, 260 Va. 521, 526-27, 539 S.E.2d 426, 428-29 (2000). Such burden-shifting means that issues related to vicarious liability, including scope of employment, are rarely resolved on demurrer. *Magallon v. Wireless Unlimited Inc.*, 85 Va. Cir. 460, 465 (Fairfax Cnty. 2012).

In her Complaint, Doe alleges that a VWC peer advisor invited her and other VWC freshmen women to the Party, where alcohol that allegedly was "spiked" was served. (Compl. ¶¶ 8, 17.) The Complaint also alleges that the VWC peer advisor did so while acting within the scope of employment. (*Id.* ¶¶ 7-8.) If the Court assumes an employer-employee relationship, which it does on demurrer based on the allegations in the Complaint, there is a presumption that the VWC peer advisor acted within the scope of his employment. *See Majorana*, 260 Va. at 526-27, 539 S.E.2d at 428-29. The scope of employment issue, therefore, is sufficiently pleaded on demurrer, and the Court overrules the demurrer on this ground.

### 4. *Doe Sufficiently Pleaded Her Breach of an Assumed Duty Claim*

Although "[a]n allegation of negligence ... is sufficient without specifying the particulars of the negligence," Va. Sup. Ct. R. 3:18, a plaintiff still must allege facts sufficient to support each element of the claim. *Graves*, 2011 Va. Cir. lexis 97, at *14. In her Complaint, Doe alleges that: VWC assumed a duty to "exercise reasonable care to protect its invitees and its students," (Compl. ¶ 50); VWC breached that duty when the VWC peer advisor "organiz[ed]" and "invit[ed] teenage freshman girls ... to [the Party]," (*Id.* ¶ 57); and Doe's injuries occurred "as a direct and proximate result of [VWC's] negligence and reckless actions set forth [in the Complaint]." (*Id.* ¶¶ 58-59.) The Court finds, considering the pleadings and acknowledging the posture of the case on demurrer, that Doe's breach of an assumed duty claim meets this standard and is sufficiently pleaded. The Court, therefore, overrules the demurrer on this ground.

*5. VWC's Proximate Cause Grounds Are Not Appropriate for the Court To Review on Demurrer*

VWC alleges in grounds V, VI, VII, VIII, and X of its demurrer that certain alleged conduct was not the proximate cause of Doe's injuries. The Court need not discuss these grounds in detail because such determinations are not appropriately resolved on demurrer. As a general rule, "negligence and proximate cause are issues to be decided by a fact finder." *Kimberlin v. PM Transport, Inc.*, 264 Va. 261, 563 S.E.2d 665 (2002). The Court should only decide such issues as questions of law when "reasonable minds could not differ." *Id.* Here, based on the allegations in the pleadings, the Court finds that reasonable minds could differ. The Court, therefore, overrules grounds V, VI, VII, VIII, and X of VWC's demurrer.

*6. Whether Doe Assumed the Risk or Was Contributorily Negligent Is Not an Issue for the Court To Resolve on Demurrer*

Contributory negligence and assumption of risk are not appropriate issues to bring before the Court on demurrer. Additionally, as mentioned *supra*, issues related to negligence are generally reserved for the fact finder, and the Court sees no reason to deviate from that general rule here. The Court, therefore, overrules the demurrer on this ground.

B. *The Court Overrules in Part and Sustains in Part Roe's Demurrer*

The Court addresses each of Roe's Demurrer grounds *seriatim*.

*1. VWC Has Not Sufficiently Pleaded a Claim for Indemnity against Roe*

A claim for indemnity, unlike a claim for contribution, arises only *after* liability has been established and plaintiff recovers from the indemnitee. *Richmond v. Branch*, 205 Va. 424, 430, 137 S.E.2d 882, 886 (1964). Without the predicate establishment of liability, an indemnification claim is improper. *Id.* Liability has not yet been established in this case, and the Court will not presume liability for purposes of the indemnity action. A claim for indemnity, therefore, is premature.

Notwithstanding the prematurity of the indemnity claim, the Court notes that the express and implied indemnity claims are not properly pleaded. The Court also sustains the demurrer as to the indemnity claim because, without the establishment of liability, the action is speculative.

*a. VWC Has Not Sufficiently Pleaded an Express Indemnity Claim against Roe*

VWC relies on two purported contracts between it and Roe to establish indemnity. (Am. Third-Party Compl. 2.) One of the purported contracts is

a residential agreement between Roe and VWC, and the other allegedly arises from language in Roe's application for admission to the college. (*Id.*) Express indemnity arises out of contracts between the parties. *Winchester Homes, Inc. v. Hoover Universal, Inc.*, 39 Va. Cir. 107, 114 (Fairfax Cnty., 1996). After reviewing the language cited by VWC in its Third-Party Complaint and the purported contracts themselves, the Court finds that these contracts, as alleged by VWC, do not include language supporting an express indemnification provision. Roe's demurrer also addresses the issue of whether these purported contracts are valid legal contracts. The Court does not make a determination as to whether they are binding legal contracts for purposes of this demurrer. On demurrer, the Court must view the facts alleged in the light most favorable to the plaintiff. At this stage, the Court assumes without deciding that the purported contracts are in fact valid contracts. The determination of the validity of the "contracts" is an issue more appropriate for the fact finder to determine. The Court, therefore, finds that, based on the allegations in the Third-Party Complaint, VWC has not sufficiently pleaded an express indemnity claim against Roe. The Court sustains Roe's demurrer on that ground.

b. *VWC Has Not Sufficiently Pleaded an Implied Indemnity Claim against Roe*

As part of his argument that VWC did not sufficiently plead an indemnity claim, Roe asserts that implied indemnity also is an inappropriate avenue of recovery. (Roe's Br. in Supp. of Dem. 7.) The Court finds that VWC has not pleaded sufficient facts to support a claim of implied indemnity based on the purported contracts.

The Virginia Supreme Court has examined the issue of implied indemnity, but has never explicitly ruled that such a cause of action exists. *See Sykes v. Stone & Webster Eng'g Corp.*, 186 Va. 116, 128-29, 41 S.E.2d 469, 475 (1947). Virginia trial courts, however, have recognized the existence of such a cause of action with the caveat that an implied indemnity action cannot coexist with an express indemnity cause of action; the two are mutually exclusive. *See, e.g., Sanderling v. Donohoe Co.*, 47 Va. Cir. 345, 345-46 (Fairfax Cnty. 1998). This Court recognizes that at least some Virginia courts acknowledge the existence of implied indemnity as a cause of action, and also considers the caveat expressed by other Virginia trial courts. Implied indemnity, unlike express indemnity, arises out of the relationship between the parties. *Winchester Homes*, 39 Va. Cir. at 114. Specifically, a special relationship between the parties needs to exist in order to find implied indemnity.

Because the Court found *supra* that, despite being alleged in the Complaint, as a matter of law, no special relationship exists, existed, or could exist based on the allegations in the Complaint between Doe and VWC, an implied indemnity cause of action cannot exist as pleaded.

The Court adopts the same rationale for the nonexistence of a special relationship between VWC and Doe as between VWC and Roe. Of note, VWC fails to allege in its Third-Party Complaint the special relationship between it and Roe that is necessary to create such an implied indemnity. The Court, therefore, turns to the language in the Complaint, which VWC adopts, to see if anything alleged could be construed as creating a special relationship between VWC and Roe. Upon review, the Court finds that the language in the Complaint does not support such a relationship. The Court therefore finds that, because the Third-Party Complaint and the Complaint do not sufficiently allege the existence of a special relationship between the parties, VWC has not sufficiently pleaded a claim for implied indemnity. The Court sustains Roe's demurrer on that ground.

### 2. *VWC Has Sufficiently Pleaded a Claim for Contribution against Roe*

In Virginia, there is a right to contribution amongst joint tortfeasors under certain circumstances, which are set out in § 8.01-34 of the Code of Virginia. "Contribution among wrongdoers may be enforced when the wrong results from negligence and involves no moral turpitude." Va. Code Ann. § 8.01-34. The party seeking contribution has the burden of proving that the concurrent negligence of other parties was a proximate cause of the injury for which damages *were paid. Nationwide Mut. Ins. Co. v. Jewel Tea Co.*, 202 Va. at 531, 118 S.E.2d at 649.

Case law interpreting § 8.01-34 indicates that "the right [to contribution] arises only when one tortfeasor has paid or settled a claim for which other wrongdoers are also liable." *Bartlett v. Roberts Recapping, Inc.*, 207 Va. 789, 793, 153 S.E.2d 193, 196 (1967) (discussing § 8-627 of the Code of Virginia, a prior section of the Code upon which § 8.01-34 is based). Although the *right* to contribution does not accrue until liability is established, a *claim* for contribution nevertheless is proper *prior to* such a liability determination. *Richmond*, 205 Va. at 430, 137 S.E.2d at 886. The Virginia Supreme Court has stated that, "in order for contribution to lie, the injured party's cause of action against the third-party defendant need not be presently enforceable; it merely is necessary that the plaintiff, at some time in the past, have had an enforceable cause of action against the party from whom contribution is sought." *Gemco-Ware*, 234 Va. at 58, 360 S.E.2d at 344.

Roe demurs to VWC's contribution claim, contending that VWC failed to plead the essential elements of a contribution claim. (Roe's Br. in Supp. of Dem. 9-13.) VWC argues in response that a contribution claim is proper pursuant to § 8.01-34 of the Code of Virginia. (VWC's Resp. to Roe's Dem. 4.)

Doe claims that she was injured, *i.e.* raped by Roe, "as a direct and proximate result" of VWC's negligence, gross negligence, and fraud. (Compl. ¶¶ 58, 64, 65, 77.) Doe, in essence, argues that VWC's actions

contributed to her injuries. The Court finds that such allegations, which VWC incorporates into its Third-Party Complaint, are sufficient to support a contribution claim against Roe.

Whether VWC has a right to recover under the theory of contribution against Roe rests on whether VWC is liable in the underlying case brought by Doe. At this juncture, *i.e.*, without knowing whether VWC is liable, discussing VWC's right to contribution against Roe is premature. If liability ultimately is established against VWC, then, at that time, VWC can seek contribution against Roe.

The Court finds based on the allegations in the Third-Party Complaint that VWC has sufficiently alleged a contribution claim against Roe. The Court notes that, to the extent VWC ultimately seeks contribution for acts involving moral turpitude, such actions are barred. Va. Code Ann. § 8.01-34. The Court overrules Roe's Demurrer on this ground.

### 3. *VWC Sufficiently Pleaded Its Breach of Contract Claim against Roe*

The elements of a breach of contract action are: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach. *Brown v. Harms*, 251 Va. 301, 306, 467 S.E.2d 805, 807 (1996).

As mentioned *supra*, VWC points to two purported contracts in its Amended Third-Party Complaint. (Am. Third-Party Compl. ¶¶ 4-5.) The Court finds that the Third-Party Complaint sufficiently alleges breach of contract because duty, breach, damage, and injury are alleged.

The Court finds that these allegations for purposes of demurrer are sufficient to support a breach of contract claim. The Court, therefore, overrules the Roe's demurrer on this ground.

### 4. *VWC Sufficiently Pleaded Its Claim for Attorney's Fees against Roe*

Our judicial system embraces the American Rule regarding recovery of attorney's fees. *See, e.g., Gilmore v. Basic Indus., Inc.*, 233 Va. 485, 490, 357 S.E.2d 514, 517 (1987). Accordingly, each litigant normally bears the cost of his attorney's fees "in the absence of a statute or contractual provision that would shift the burden of payment to the unsuccessful party." *Dowling v. Rowan*, 270 Va. 510, 521-22, 621 S.E.2d 397, 402 (2005). The American Rule has some exceptions, however, including recovery of attorney's fees expended in a third-party claim arising out of a breach of contract. *Hiss v. Friedberg*, 201 Va. 572, 577, 112 S.E.2d 871, 875-76 (1960). The Court finds that, based on the recognized exception for the recovery of attorney's fees expended in a third-party claim, VWC has sufficiently pleaded its claim for attorney's fees in light of the alleged contracts. Whether VWC ultimately will recover those fees is not a matter presently before the Court. The Court, therefore, overrules Roe's Demurrer on this ground.

## C. *The Court Denies in Part and Sustains in Part Doe's Motion To Strike*

Doe's Motion To Strike includes similar arguments to those presented in Roe's Demurrer. The Court, therefore, incorporates its reasoning, discussed *supra*, in the Court's ruling on Roe's Demurrer when ruling on Doe's Motion To Strike. The Court makes the following determinations, consistent with its rulings on Roe's Demurrer, with respect to Doe's Motion To Strike: the Court sustains the motion with respect to the express and implied indemnity grounds and denies the motion with respect to the contribution ground.

## D. *The Court Denies VWC's Motion for a Bill of Particulars*

The Court finds that the Complaint sufficiently alleges specifics regarding the allegation of negligent hiring of security guards. Based on the circumstances and positions of the parties, it is reasonable to conclude that VWC would have superior knowledge about information pertaining to the security guards. The allegations against VWC in the Complaint are sufficient to inform VWC of the true nature of the claim in order for VWC to properly defend itself. *See* Va. Sup. Ct. R. 3:7. The Court finds that the request made in the Motion for Bill of Particulars is better suited for discovery. The Court denies VWC's Motion for Bill of Particulars.

## E. *The Court Denies Roe's Special Plea in Bar*

Roe's Special Plea in Bar claims that VWC's Third-Party Complaint is barred by the statute of limitations. (Br. in Supp. of Special Plea in Bar 1.) Roe refers to the Tolling Agreement entered into by Doe and VWC, to which Roe was not a party, as a basis to dismiss the Third-Party Complaint. (Special Plea in Bar ¶¶ 4-9.) Roe claims that, because Doe initiated her action against VWC *after* the statutory period, Roe cannot be held liable because he was not a party to the Tolling Agreement. (*Id.* ¶¶ 9.) The Court does not agree.

The Court instead finds VWC's position persuasive. The statute of limitations for contribution and indemnification obligations does not arise until the defendant's liability is established or discharged. *Gemco-Ware*, 234 Va. at 57, 360 S.E.2d at 344. Here, liability against VWC is yet to be determined, so the statute of limitations has not run. Further, any Tolling Agreement between VWC and Doe has no bearing on whether VWC's Third-Party Complaint is timely against Roe.

VWC's request for indemnification and contribution from Roe does not violate the statute of limitations. Although the Court finds that VWC's request for indemnification does not violate the statute of limitations, the Court reiterates its ruling, *supra*, that VWC did not properly plead those claims in its Third-Party Complaint. The Court denies Roe's Special Plea in Bar.

## Conclusion

The Court rules on the five motions before the Court as follows: overrules in part and sustains in part VWC's Demurrer; overrules in part and sustains in part Roe's Demurrer; denies in part and sustains in part Doe's Motion To Strike; denies VWC's Motion for Bill of Particulars; and denies Roe's Special Plea in Bar. The Court grants Doe leave to file an amended Complaint within twenty-one days. The Court also grants VWC leave to file an amended Third-Party Complaint within twenty-one days.

## July 29, 2015

Today the Court rules on the Special Plea of Accord and Satisfaction filed by Third-Party Defendant Robert Roe and the related Demand for Trial by Jury filed by Third-Party Plaintiff Virginia Wesleyan College. The two issues before the Court are: (1) whether there are any disputed issues of fact regarding the Special Plea that properly should be resolved by a jury and (2) whether VWC's pursuit of its Amended Third-Party Complaint against Roe is precluded by the Confidential Settlement·Agreement and Release between VWC and Roe (the "Agreement"). Because there are no disputed issues of fact related to the Special Plea and because the Court finds that filing the Amended Third-Party Complaint is not precluded by the Agreement, the Court denies VWC's Jury Demand and denies Roe's Special Plea. The Court further articulates the reasons for its rulings herein.

## Background

Doe had recently begun her freshman year as a student at VWC in August 2012. (Compl. 2.) Doe alleges that, on or about August 24, 2012, (*id.* ¶ 5), she was raped and sexually assaulted by Roe, another VWC student, in a VWC dormitory (*id.* ¶¶ 26-27), and that VWC is liable for the resultant damages. (*See generally id.*) Doe alleges that she attended an on-campus party (the "Party") "sponsored" by a VWC-employed orientation peer advisor, where she admits that she voluntarily consumed alcohol offered to her. (*Id.* ¶¶ 12-13.) The alcohol available at the Party allegedly "was spiked with an agent designed to incapacitate [Doe and others] and render them vulnerable to sexual assault." (*Id.* ¶ 17.) VWC-employed security officers allegedly visited the Party at some point, observed "alcohol available for teenager consumption," and took no action. (*Id.* ¶ 15.) Doe allegedly left the Party with some friends, who were impaired, to help them get to their dormitory rooms. (*Id.* ¶ 21.) Doe alleges that Roe followed her and her friends after they left the Party and that, once Doe had escorted her friends back to their dormitory rooms, Roe assaulted Doe and "forced her back to his dorm room," where she alleges Roe raped and sexually assaulted her.

(*Id.* ¶¶ 23-27.) Doe prays for judgment against VWC based on three counts: negligence, gross negligence, and fraud. (*See generally id.*)

Sometime after the alleged August 24, 2012, incident ("the Incident"), Roe departed VWC as a student, at which time VWC and Roe entered into the Agreement. The Agreement includes, *inter alia*, a recitation of intent (Agreement, Recitation D), a non-disparagement clause (*id.* ¶ 5), and a release clause. (*Id.* ¶ 6.) The recitation states, "[Roe and VWC] desire to resolve the differences between them relating to the Incident and subsequent administrative proceedings without the need for litigation." (Agreement, Recitation D.) Although there are no paragraph titles and there was some disagreement at the hearing regarding whether Paragraph 5 of the Agreement is a "non-disparagement" clause, the Court, for purposes of this Opinion, refers to it as such.

VWC filed a third-party complaint against Roe, which it later amended, seeking indemnity and contribution. (*See generally* Third-Party Compl.; Am. Third-Party Compl.) When referring to Roe as the Third-Party Defendant, VWC consistently used the pseudonym "Robert Roe" instead of Roe's actual name. (*See id.*) The Amended Third-Party Complaint is the basis for the Special Plea.

The parties subsequently filed various motions. The parties were before the Court on April 23, 2015, for VWC's Demurrer, Roe's Demurrer, Doe's Motion to Strike, VWC's Motion for Bill of Particulars, and Roe's Special Plea in Bar. The Court rendered its rulings on those motions in its June 20, 2015, Opinion Letter.

The parties most recently were before the Court on July 16, 2015, for a hearing on the Jury Demand and Special Plea.

### Positions of the Parties

Although the pleadings at issue are part of the record, the Court elects to highlight specific, relevant portions of them herein.

### A. Roe's Special Plea of Accord and Satisfaction

Roe relies on the Agreement as the basis for his Special Plea. (Special Plea 1.) Roe points out that, pursuant to the Agreement, VWC "covenanted" not to "*do or say anything at any time which could reasonably be interpreted as intended to harm the personal, business, or other interests of [Roe].*" (*Id.* ¶ 10 (quoting Agreement ¶ 5).) Roe argues that VWC's filing of the Amended Third-Party Complaint qualifies as an act that could reasonably be interpreted as intended to harm him. (*Id.* ¶ 20.) Roe prays for dismissal of the Amended Third-Party Complaint given VWC's violation of the Agreement. (*Id.* ¶ 21.)

## B. *Roe's Brief in Support of Special Plea and Opposition to Jury Demand*

Roe argues that VWC is bound by the plain terms of its unambiguous contract with Roe, *i.e.*, the Agreement. (Br. in Supp. and Opp'n to Jury Demand ¶ 1.) Roe asserts that the plain language of the Agreement precludes VWC from pursuing the Amended Third-Party Complaint. (*Id.* ¶ 19.) Roe also suggests that the Court should deny VWC's Jury Demand because there are no issues of fact for a jury to resolve. (*Id.* ¶¶ 19-24.) Roe again asks the Court to dismiss the Amended Third-Party Complaint as a matter of law. (*Id.* ¶ 24.)

## C. *VWC's Response to Special Plea and Jury Demand*

VWC acknowledges entering into the Agreement, but denies that the Agreement releases Roe from liability or that VWC entered into the Agreement intending to release Roe. (Resp. ¶¶ 2-3.) VWC admits that, when it entered into the Agreement, it did not foresee any situation where it might take legal action against Roe (*id.* ¶ 4), but nevertheless asserts that the contractual language does not release Roe. (*Id.* ¶ 6.) VWC points out that the more specific release language in the Agreement, which it argues takes precedence over the recitation of intent, is actually a one-way release provision that releases VWC but not Roe. (*Id.*) VWC also denies that the Amended Third-Party Complaint defames, disparages, or impugns Roe. (*Id.* ¶ 9.)

Although the non-disparagement clause states that VWC will not, *inter alia*, defame, disparage, or impugn Roe, Roe, in his Special Plea, asserts *only* that VWC's filing of the Amended Third-Party Complaint violated VWC's agreement to "not ... do or say anything at any time which could reasonably be interpreted as intended to harm the personal, business, or other interests" of Roe. (Br. in Supp. and Opp'n to Jury Demand ¶ 2; Reply ¶ 9; *see also* Special Plea ¶¶ 10, 15, 18.) The Court, therefore, need not, and does not, evaluate whether VWC's filing of the Amended Third-Party Complaint is an act that defamed, disparaged, or impugned Roe.

VWC's position is that the Amended Third-Party Complaint "simply seeks indemnification or contribution from Robert Roe in the event Plaintiff proves a rape, sexual assault, or other harm *she alleged.*" (*Id.* ¶ 11 (emphasis in original).) VWC asks the Court to overrule the Special Plea of Accord and Satisfaction. (*Id.* ¶ 17.)

## D. *Roe's Reply to VWC's Response*

Roe claims that, *inter alia*, VWC is attempting to escape the plain meaning of the Agreement and that VWC's intent and purpose are irrelevant. (Reply ¶¶ 3-4.) Roe disputes VWC's position that the "lawsuit against Roe," *i.e.*, the Amended Third-Party Complaint, "could not *reasonably be interpreted* as intended to harm the personal, business, or other interests of Roe." (*Id.*

¶ 12.) Roe again seeks dismissal of the Amended Third-Party Complaint. (*Id.* ¶ 13.)

*Analysis*

## A. *Legal Standard*

The Virginia Constitution provides the right to jury trial in certain actions at law. Va. Const., art. 1, § 11. This right is *only* guaranteed, however, if there is a need to resolve disputed facts. *Etheridge v. Medical Ctr. Hosps.*, 237 Va. 87, 96, 376 S.E.2d 525, 529 (1989). Stated differently, "[t]he province of the jury is to settle questions of fact, and, when the facts are ascertained, the law determines the rights of the parties." *W. S. Forbes & Co. v. Southern Cotton Oil Co.*, 130 Va. 245, 260, 108 S.E. 15, 20 (1921).

"[I]t is the duty of the court to construe a written contract when it is clear and unambiguous on its face." *Online Res. Corp. v. Lawlor*, 285 Va. 40, 54, 736 S.E.2d 886, 894 (2013). The law further provides that, "when the terms of a contract are clear and unambiguous, a court is required to construe the terms according to their plain meaning." *Golding v. Floyd*, 261 Va. 190, 192, 539 S.E.2d 735, 736 (2001). "Ambiguity exists if the text can be 'understood in more than one way or refers to two or more things simultaneously [or] when the language is difficult to comprehend, is of doubtful import, or lacks clearness or definiteness'." *Boyton v. Kilgore*, 271 Va. 220, 227, 623 S.E.2d 922, 926 (2006) (quoting *Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985) (citation omitted)). "Contracts are not rendered ambiguous merely because the parties disagree upon the meaning of the language used to express the agreement. Even though an agreement may have been drawn unartfully, the court must construe the language as written if its parts can be read together without conflict." *Doswell, Ltd. P'ship v. Virginia Elec. & Power Co.*, 251 Va. 215, 222-23, 468 S.E.2d 84, 88 (1996). The issue of whether a writing is ambiguous is a matter of law, not fact. *Langman v. Alumni Ass'n of the Univ. of Va.*, 247 Va. 491, 498, 442 S.E.2d 669, 674 (1994).

An "[a]ccord and satisfaction is a method of discharging a contract or cause of action, whereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement, the 'accord' being the agreement and the 'satisfaction' its execution or performance." *Owen v. Wade*, 185 Va. 118, 124, 37 S.E.2d 759, 762 (1946) (internal quotations omitted).

A special plea is a type of plea in bar. A plea in bar presents a distinct issue that, if proven, creates a bar to the plaintiff's right of recovery; the moving party has the burden of proof on that issue. *Hilton v. Martin*, 275 Va. 176, 177, 654 S.E.2d 572 (2008). The purpose of a plea in bar is "to narrow the litigation by resolving an issue that will determine whether a plaintiff may proceed to trial on a particular cause of action." *Hawthorne*

*v. VanMarter*, 279 Va. 566, 578, 692 S.E.2d 226, 234 (2010). If there is a dispute as to the facts underlying a plea in bar, "a party may demand that a jury decide the disputed factual issues raised by the plea." *Id.* at 577, 692 S.E.2d at 233.

## B. *Discussion*

The Court has considered the Jury Demand, Special Plea, related briefs, oral argument at the July 16, 2015, hearing, and applicable authorities. The Court now rules on the motions.

The following facts are undisputed. VWC and Roe entered into the Agreement, and there is no disagreement regarding the contents of the Agreement. VWC filed a third-party complaint, and subsequently an amended third-party complaint, against Roe seeking indemnity and/or contribution. The Complaint uses the pseudonym "Jane Doe" to refer to the Plaintiff, and the Amended Third-Party Complaint uses the pseudonym "Robert Roe" to refer to the Third-Party Defendant; neither pleading uses the Plaintiff's or the Third-Party Defendant's actual name. In fact, all of the pleadings in the case use these pseudonyms instead of the real names of the parties.

### 1. *There Are No Disputed Issues of Fact for a Jury To Resolve*

Juries act as fact finders. *Forbes*, 130 Va. at 260, 108 S.E. at 20. Once all disputed facts have been resolved, there is no right to or need for a jury. *See Etheridge*, 237 Va. at 96-97, 376 S.E.2d at 529. Rather, it is the province of the Court to apply the law to undisputed facts. *Id.* at 96, 376 S.E.2d at 529. For purposes of the motions currently before the Court, there are no disputed facts.

The parties agree they entered into the Agreement, and they agree as to the language that comprises the Agreement. The dispute relates to whether VWC violated the non-disparagement language of Paragraph 5 and whether the language of Paragraph 6 is a mutual release that applies to both VWC and Roe. More specifically, the issues are: (1) whether VWC's filing of the Amended Third-Party Complaint breaches the Agreement; (2) whether the Agreement releases VWC from future liability; and (3) if such a breach or release exists, whether that breach or release requires dismissal of the Amended Third-Party Complaint because the Agreement constitutes an accord and satisfaction that precludes such action. The Court does not find that these issues involve disputed factual issues, but rather that they involve issues of law for the Court to resolve by applying contract law to the Agreement's undisputed contractual language. Because there are no disputed facts, the Court does not find that the Jury Demand is appropriate.

The Court, therefore, denies the Jury Demand on the Special Plea.

## 2. *The Agreement Does Not Prohibit VWC from Pursuing the Amended Third-Party Complaint*

As stated *supra*, the Court is tasked with resolving issues of law, and the Court applies the law to the undisputed facts in this case to render its ruling on the Special Plea. The Court finds that, upon consideration of the Agreement as a whole, the language in the Agreement does *not* bar VWC from pursuing its Amended Third-Party Complaint against Roe. The Court further finds that VWC's Amended Third-Party Complaint does *not* violate the terms of the Agreement.

As an initial matter, the Court does not find that the language of the Agreement is ambiguous. It, therefore, is within the province of the Court to interpret the provisions in the Agreement. *Online Res. Corp.*, 285 Va. at 54, 736 S.E.2d at 894. The two provisions that are at issue are Paragraphs 5 and 6 of the Agreement.

### a. *The Non-Disparagement Clause Does Not Prohibit VWC from Pursuing the Amended Third-Party Complaint*

Paragraph 5 of the Agreement includes non-disparagement language. (Agreement ¶ 5.) *See supra*. Specifically, it states:

> The Parties agree that they will not (nor encourage others to), in any way, defame, disparage, impugn, or do or say anything at any time which could reasonably be interpreted as intended to harm the personal, business, or other interests of either of the parties, and in the case of [VWC], any of its trustees, officers, employees, or students.

(*Id.*)

The parties stipulated at the July 16, 2015, hearing that the contents of a pleading *could* be interpreted as intended to harm one of the parties to the Agreement, but they disagreed regarding whether VWC's filing of the Amended Third-Party Complaint constituted an act intended to harm the actual Robert Roe. As stated *supra*, the Court is tasked with determining whether the non-disparagement language in Paragraph 5 precludes VWC from pursuing the Amended Third-Party Complaint. The Court finds as a matter of law that it does not.

In making its determination, the Court considers both VWC's use of a pseudonym for Roe in the context of a cause of action in which the Plaintiff also is referred to by a pseudonym and the indemnification and/or contribution nature of the Amended Third-Party Complaint. (*See generally* Am. Third-Party Compl.) The Court also considers that, in the Amended Third-Party Complaint, VWC does not suggest that Roe committed the acts Doe alleges; VWC instead argues that, *if* a factfinder were to find that Roe committed the alleged acts, *then* VWC is entitled to indemnification and/

or contribution from Roe. (*Id.* ¶¶ 5-8.) The Court does not find that those allegations by VWC, in light of the Amended Third-Party Complaint, as a whole and viewed in the context of a case in which both the Plaintiff and Third-Party Defendant are referred to only by pseudonyms, "could reasonably be interpreted as intended to harm" the actual Third-Party Defendant, known in this case as Robert Roe.

The Court concludes that, by using the pseudonym "Robert Roe," VWC effectively has shielded Roe's real name from the public, thereby precluding any perception by the public that VWC's filing of the Amended Third-Party Complaint was intended to harm the interests of the actual Third-Party Defendant, *i.e.*, one of the parties to the Agreement.

By their very nature, non-disparagement clauses target the negative inference the public may draw regarding the party or parties protected by those clauses. Under the doctrine of *ejusdem generis*, the Court restricts its interpretation of the general descriptor "do or say anything at any time which could reasonably be interpreted as intended to harm the personal, business, or other interests of either of the parties" to the same class as that of the specific descriptors "defame, disparage, or impugn," *i.e.*, acts that could result in a negative perception by the public. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 199-213 (2012). Here, the inability of the public to impute any negative inference to the actual Roe, based on reference to both him and the alleged victim, the actual Doe, via pseudonyms, belies any argument that VWC intended to harm the interests of the actual Roe.

A stronger argument supporting a violation of Paragraph 5 would exist *if* Roe's actual name had been used, but that issue is not presently before the Court, and, as such, the Court does not address it.

The Court further interprets the Amended Third-Party Complaint as a defensive response to Doe's Complaint and not some offensive litigation measure intended by VWC to harm Roe.

Of note, VWC seeks compensatory damages but not punitive damages. (*See* Am. Third-Party Compl. ¶ 8.) VWC takes the position that, by doing so, its position that the Third-Party Complaint is not meant to harm Roe is bolstered. (Resp. ¶¶ 14-15.) The Court does not find this argument on its own compelling in light of Doe's allegations of negligence, gross negligence, and fraud, but rather views it in light of the other facts showcased in this Opinion.

The Court is not aware of any allegations that VWC encouraged Doe to initiate her litigation, and VWC's Amended Third-Party Complaint *is conditioned* on the factfinder's determination that Roe committed the alleged acts. VWC makes no independent assertions or suggestions that Doe's allegations are meritorious, nor does VWC introduce any allegations not already asserted in the Complaint. A stronger argument supporting a violation of Paragraph 5 would exist *if* VWC had asserted that Roe

committed the alleged acts, but, once again, this issue is not presently before the Court to resolve.

Even assuming, *arguendo*, that the Court held that the Amended Third-Party Complaint could reasonably be interpreted as intended to harm Roe, dismissal of the current action would not be appropriate; rather, a more appropriate remedy for Roe would be a cause of action against VWC for breach of the Agreement. *See, e.g., Sunrise Continuing Care, L.L.C. v. Wright*, 277 Va. 148, 156, 671 S.E.2d 132, 136 (2009) ("As a general rule, damages for breach of contracts are limited to the pecuniary loss sustained." (quoting *Kamlar Corp. v. Haley*, 224 Va. 699, 705, 299 S.E.2d 514, 517 (1983))). For these reasons, the Court concludes that Paragraph 5 of the Agreement does not preclude VWC from pursuing the Amended Third-Party Complaint, as drafted, against Roe.

> b. *The Release Language Does Not Prohibit VWC from Pursuing the Amended Third-Party Complaint*

As an initial matter, Roe's apparent reliance on the recitation of intent is misplaced. (Special Plea ¶ 4.) The Court assumes without deciding that the recitation of intent can be interpreted to include release language, as VWC implies. (Resp. ¶ 8.) "Under settled rules of construction, if the prefatory or recital language conflicts with the obligatory provisions of the contract, then the obligatory provisions must prevail." *United Va. Bank/National v. Best*, 223 Va. 112, 115, 286 S.E.2d 221, 223 (1982). The Court, therefore, looks to the specific, obligatory release provision in the Agreement.

Paragraph 6 of the Agreement includes release-from-liability language. (Agreement ¶ 6.) The paragraph reads, in pertinent part:

> Roe, for himself, his heirs, agents, and assigns, hereby releases [VWC] and its trustees, officers, employees, students, agents, and all of their respective successors, heirs, and assigns, of and from any cause of action, suit, promise, damage, and claim or demand of every kind or character whatsoever, whether presently known or unknown, suspected or unsuspected, under state or federal laws, in existence as of the date of the execution of this agreement by Roe, based on or related to the Incident and/or the administrative proceeding that followed.

*Id.*

Virginia law requires courts to interpret contract language strictly, according to its plain meaning, when it is clear and unambiguous. *See Floyd*, 261 Va. 190, 192, 539 S.E.2d 735, 736 (2001). In interpreting contracts, "courts are bound to say that the parties intended what the written instrument plainly declares." *W. F. Magann Corp. v. Virginia-Carolina Elec. Works, Inc.*, 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962). The Court,

strictly interpreting the Agreement's plain language, finds that Paragraph 6 is a one-way release of liability in favor of VWC. The contractual language expressly states that *"Roe, for himself, his heirs, agents, and assigns, hereby releases [VWC]"* and related entities from liability, but there is no corresponding language by which VWC releases Roe. (*Id.* (emphasis added).) The Court finds as a matter of law that the contract language is *not* a mutual release and therefore does not release Roe from liability. There is also no corresponding release provision in the Agreement in favor of Roe. The Court therefore finds that there was no violation of the release clause here because the release favors VWC only; simply stated, there was no release clause for VWC to violate.

The Court further finds that, in light of the Agreement's inclusion of a *mutual* non-disparagement clause and a release favoring *only* VWC, the parties intended *not* to release Roe from liability and to allow VWC the opportunity to pursue, *inter alia*, certain causes of action and suits. For these reasons, the Court concludes that Paragraph 6 of the Agreement does not preclude VWC from pursuing the Amended Third-Party Complaint—as drafted—against Roe.

### c. *The Agreement Is Not an Accord and Satisfaction*

Taking all of the aforementioned facts into consideration, the Court finds as a matter of law that the Agreement is *not* an accord and satisfaction that bars VWC from pursuing its Amended Third-Party Complaint. As indicated, an accord and satisfaction "is a method of discharging a contract or cause of action, whereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other." *Wade*, 185 Va. at 124, 37 S.E.2d at 762.

With respect to the alleged violation of the Agreement's non-disparagement clause, the Court notes that Roe did not cite and the Court is not aware of any Virginia case law to support Roe's claim that a violation of a non-disparagement clause, which the Court did not find here, would preclude VWC, under a theory of accord and satisfaction, from pursuing the Amended Third-Party Complaint. The Court, therefore, does not find that VWC is precluded from pursuing its Amended Third-Party Complaint based on any violation of the non-disparagement language in the Agreement.

As discussed *supra*, the Agreement does *not* include mutual release language or release language favoring Roe. Although the Agreement might constitute an accord and satisfaction that would preclude *Roe* from filing an action *against VWC*, there is nothing in the Agreement that precludes *VWC* from pursuing an action *against Roe*. The issue of whether the Agreement is an accord and satisfaction that would prevent *Roe* from pursuing an action against *VWC* is not before the Court. The Court therefore does not evaluate the merit of such an argument. In light of the fact that there is a *mutual* non-disparagement clause and a release provision that favors *only*

VWC, the Court's interpretation of the language is that the parties to the Agreement intended to preserve VWC's right to pursue a cause of action against Roe. The parties *could have* included mutual release language or a separate provision to release Roe, but they elected not to do so. Of note, the Agreement included an integration clause, so any enforceable release of Roe would have had to appear within the four corners of the Agreement. Absent such a release, the Court does not construe the Agreement as an accord and satisfaction that bars VWC from pursuing its Amended Third-Party Complaint.

For these reasons, the Court does not find that the Agreement, specifically Paragraphs 5 and 6, expressly precludes VWC from pursuing its Amended Third-Party Complaint against Roe, nor does it consider the Agreement to be an accord and satisfaction that precludes VWC from pursuing its Amended Third-Party Complaint against Roe.

The Court, therefore, denies the Special Plea.

## Conclusion

For the reasons articulated herein, a jury trial is not appropriate to resolve the Special Plea because there are no disputed facts, and Roe has not met his burden of showing that there has been an accord and satisfaction of the claims asserted in VWC's Amended Third-Party Complaint. The Court denies the Jury Demand and denies the Special Plea. Any objections to this ruling shall be submitted to the Court within fourteen days.